## THE PEOPLE, Respondents, *v.* FLORA BUCHANAN, Appellant.

NDICTMENT—CRIMINAL LAW—SURPLUSAGE.—If an indictment conclude with "*contra formam statuti*," and no statute exist concerning the offense charged, yet if the facts alleged constitute a common law offense, and the same be charged with certainty, the conclusion of the indictment will be treated as surplusage, and the indictment be held good.

JUDICIAL KNOWLEDGE—ORDINANCES.—Courts will not take judicial knowledge of city ordinances; they must be proved by the record, or by certified copies thereof.

INSTRUCTIONS.—If the defendant ask the court to give certain instructions prepared by him, and the same contain the law of the case, but so mixed with erroneous matter that they are calculated to mislead the jury, it is not error for the court to refuse the whole.

APPEAL from the second judicial district, Ada county.

*Alanson Smith and E. J. Curtis,* for the appellant.

*F. E. Ensign,* district attorney, for the respondents.

CLARK, J., delivered the opinion, HOLLISTER, C. J., concurring specially in the judgment. PRICKETT, J., concurred.

This cause comes to this court from the second judicial district of this territory for Ada county. The indictment herein was filed on the twenty-second day of March, 1877, and charges that the said " Flora Buchanan on the thirteenth day of January, 1877, and at divers other days and times between that day and the day of finding the indictment, in the county of Ada, and territory of Idaho, and within the corporate limits of Boise city—to wit, on Idaho street in said Boise city, willfully and unlawfully did keep a bawdy-house, then and there resorted to for the purpose of public prostitution and lewdness." On the twenty-seventh of March, 1877, a demurrer by said appellant was filed, setting forth as grounds of demurrer:

1. That the grand jury, by which the indictment was found, had no legal authority to inquire into the offense charged, by reason of its not being within the legal jurisdiction of the court. That the court has no jurisdiction in this action, in this: that the indictment was drawn under, and by virtue of an act of the legislative assembly of Idaho territory, entitled " an act relating to houses of ill-fame in Boise city," approved January 12, 1877, which act gives power and authority to the mayor and common council of Boise city, Ada county, Idaho territory, to regulate, fix the location of, or abolish all bawdy-houses, houses of ill-fame, or houses kept for the purposes of prostitution within the limits of Boise city, did pass an ordinance, of which the following is a copy:

"ORDINANCE No. 31.

" The mayor and common council of Boise city do ordain:

" Section 1. That it shall not be lawful for any person to keep a bawdy-house, house of ill-fame, or house kept for the purposes of prostitution, within the corporate limits of Boise city.

" Sec. 2. Any person convicted of keeping a bawdy-house, house of ill-fame, or house for the purposes of prostitution, within the limits of Boise city after the passage of this

ordinance, shall be fined in any sum not less than one hundred dollars, or imprisonment in the county jail not less than six months, or by both such fine and imprisonment, together with costs of suit.

"Sec. 3. This ordinance to take effect and be in force from and after its approval by the mayor.

"Approved March 12, 1877.

"T. E. LOGAN, Mayor."

That under said act and said ordinance, the city magistrate courts, or justice of the peace courts, designated as such, alone have jurisdiction to try offenses committed in violation of said act or ordinance.

2. That it does not substantially conform to the requirements of sections 233 and 234.

3. That more than one offense has been charged in the indictment.

4. That the indictment is not direct, specific, and certain, and is not in the language of the act or ordinance above referred to.

5. That the facts stated do not constitute a public offense.

6. That the legislative assembly of the territory of Idaho had no power or authority to pass the act entitled "an act relating to houses of ill-fame in Boise city," approved January 12, 1877, under which the said indictment was drawn; that said act grants to Boise city a special charter or privilege, confers special powers and privileges not granted to all the cities of the same class within the territory; all of which is expressly prohibited by section 1889 of the revised statutes of the United States.

On the hearing the demurrer was overruled by the court.

Section 285 of the criminal practice act provides as follows: "The defendant may demur to the indictment when it shall appear upon the face thereof either: 1. That the grand jury, by which it was found, had no legal authority to inquire into the offense charged by reason of its not being within the local jurisdiction of the court. 2. That it does not substantially conform to the requirements of sections 233 and 234. 3. That more than one offense has been charged in the indictment. 4. That the facts stated do not

constitute a public offense. 5. That the indictment contains any matter, which, if true, would constitute a legal justification or excuse of the offense charged, or other bar to the prosecution."

It is claimed in and by the first ground of demurrer that the court has no jurisdiction in this action, by reason of the act relating to houses of ill-fame in Boise city, approved January 12, 1877, which gives the power and authority to the mayor and common council of said city to regulate, fix the location of, or abolish, all bawdy-houses within the limits of Boise city, and also by reason of an alleged ordinance specified and set forth in said ground of demurrer, abolishing bawdy-houses within the limits of said city.

Courts will, judicially, take notice of the public and private acts of legislatures, and assume them to be true; such, however, is not the rule in regard to city ordinances; they must be proved either by the record, or by a certified copy thereof. (1 Greenl. on Ev. 484.) Hence, the ordinance might have been shown on the trial as evidence touching the jurisdiction of the court to hear and determine this action, but could not be considered on the determination of the demurrer.

The second ground of demurrer states that the indictment does not substantially conform to sections 233 and 234. Section 233 of the criminal practice act is as follows: "Section 233. The indictment shall contain the title of the action, specifying the name of the court to which the indictment is presented, and the names of the parties; a statement of the acts constituting the offense, in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is meant."

An examination of the indictment discloses that it is entitled as follows: "The people of the United States in the territory of Idaho, against Flora Buchanan. In the district court of the second judicial district, in the county of Ada and territory of Idaho. March term, 1877." The indorsements on the indictment show: 1. The title of the action; next, indictment for misdemeanor. "A true bill. A. Rossi, foreman of the grand jury. Presented and filed in open

court, in presence of the grand jury, March 22, A. D. 1877.
A. L. Richardson, clerk district court. By E. A. Hollister, deputy."

The indictment charges that the said "Flora Buchanan, on the thirteenth day of January, 1877, and at divers other days and times between that day and the day of finding this indictment, in the county of Ada and territory of Idaho, and within the corporate limits of Boise city, to wit, on Idaho street in said Boise city, willfully and unlawfully did keep a bawdy-house then and there resorted to for the purposes of public prostitution." It is clear that this indictment charges the defendant with keeping a bawdy-house within the corporate limits of Boise city, in this county and territory, and that such offense is stated in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is meant. Section 234 gives a form for the indictment, which is substantially followed herein. The third ground alleges that more than one offense has been charged. We find nothing in the indictment to warrant this allegation. The fourth ground is equally untenable, because it is hereinbefore shown that a city ordinance must be proved on the trial, and can not be used on demurrer.

The fifth ground alleges that the facts stated in the indictment do not constitute a public offense. In this action it is claimed that the common law is repealed by the act of the legislature, approved January 12, 1877, and hereinbefore set forth. This act delegates to the mayor and council of Boise city full power and authority to regulate or abolish bawdy-houses within the limits of Boise city; yet before this act can operate as a repeal of the common law on the same subject, it must further appear that the mayor and council of said city had accepted such power and authority by the passage of an ordinance or by-law under it, which fact does not appear in the transcript in such manner or form as to entitle it to notice in the review of this case. Therefore we hold that this indictment is good at common law even though it conclude with the words "contrary to the form of the statute in such cases made and provided."

(1 Archb. Crim. Pr. and Pl. 307, and authorities therein cited; 1 Bish. Crim. Pro., sec. 349, and cases therein cited.)

It is unnecessary to review the sixth ground of demurrer for the reason that we hold the indictment good at common law. The court committed no error in its refusal to sustain the demurrer.

On the day of filing the demurrer the defendant also filed a motion to set aside the indictment on the ground that it was not found by and presented in the presence of a legal grand jury as prescribed and directed by the criminal practice and the jury law, to wit, A grand jury composed of sixteen members, but that said indictment was found by, and presented in the presence of a less number than sixteen members.

Section 274 of the criminal practice provides that "the indictment shall be set aside by the court in which the defendant is arraigned, and upon his motion in either of the following cases: 1. When it is not found, indorsed, and presented as prescribed in this act. 2. When the names of the witnesses examined before the grand jury, or whose depositions may have been read before them are not inserted at the foot of the indictment or indorsed thereon. 3. When any person is permitted to be present during the session of the grand jury while the charge embraced in the indictment is under consideration, except as provided in section 212."

Section 225 of the criminal practice act provides: "An indictment can not be found without the concurrence of at least twelve grand jurors; when so found it shall be indorsed a true bill, and the indorsement shall be signed by the foreman of the grand jury."

The indictment shows that the several sections herein referred to and covering the grounds of this motion have been fully complied with. It is true that the indictment accuses the defendant of the crime of misdemeanor; this mode of charging the offense is not error.

Section 234, giving form of indictment, contains among other things, the following: " A. B. is accused by the grand jury of the county of ——— by this indictment of the crime

of (giving its legal appellation, such as murder, arson, manslaughter, or the like, or designating it as felony, or misdemeanor), committed as follows."

The transcript does not show the number of persons who composed the grand jury, only so far as the indictment discloses it by its indorsements, to wit, "A true bill. A. Rossi, foreman of the grand jury." "Presented and filed in open court in presence of the grand jury." These indorsements, nothing appearing to the contrary, are sufficient to warrant the conclusion that the indictment was found by and presented in the presence of a legal grand jury, as prescribed and directed by statute, therefore the motion was properly denied. The record shows that the defendant was duly arraigned, and thereon entered her plea of not guilty, and that afterwards she was tried before the court and a jury of twelve persons, and a verdict of guilty was duly rendered. Before sentence was pronounced the defendant filed a motion in arrest of judgment. The grounds upon which this motion may be made, under the statute, are identical with those for which a demurrer will lie, and having been fully considered on the hearing of the demurrer and overruled, it was right and proper to overrule this motion.

The defendant moved the court for a new trial on the grounds that the court erred on the trial in allowing the following questions to be asked the witnesses for the prosecution: "What was the general reputation of the house resided in by the defendant?" and erred in receiving in evidence the answers thereto, which were that "the general reputation of the house of defendant was that of a bawdy-house." 2. That the court erred in refusing to give the following instruction asked by defendant: "If the jury believe from the evidence that the defendant is simply a woman of loose morals herself, and lives alone, and admits one man or many to illicit intercourse with her, she does not keep a bawdy-house, for more women than one must live or resort together to make such a house, and whatever be the reputation of the house in which she resides, if it is a proven or admitted fact that that the defendant lives alone, no other

woman residing, or living in, or resorting to, the same house, the jury will find the defendant not guilty."

That the evidence was that defendant resided alone, no other woman or women residing with her or frequenting the house. That J. D. Agnew, J. M. Martin, and Still Kelly, for the prosecution, and Flora Buchanan and H. H. Lamkin, for defendant, testified that the defendant lived alone; that no other woman or women resided with her, or resorted to the house of defendant for the purpose of prostitution.

We have examined the authorities covering the errors complained of, and are of the opinion that the weight of authority is to the effect that the reputation of the house, as a house of ill-fame, might be given in evidence, and moreover, might be submitted to the jury as sufficient evidence on which to convict the defendant if they chose, without having particular facts, such as men and women meeting together for the purpose of illicit intercourse.

It is believed to be the generally-received doctrine, that the characters of all the women, and, indeed, of the men, who dwell in or frequent the house, may in these cases be shown by reputation; character, indeed, is a thing of reputation, and is not to be shown by particular instances of bad conduct, but by evidence of what is generally said of the person.  (1 Bish. Crim. Pro., secs. 89, 90; 1 Greenl. Ev. 53.)

On the trial of an indictment for keeping a house of ill-fame, evidence of the general character for chastity of women frequenting the house is admissible.  (*Commonwealth* v. *Garnet*, 1 Allen, 7; *Clementine* v. *State*, 14 Mo. 112; *State* v. *McLowel Dudley*, S. C. 346.)

The only remaining ground of error for our consideration, is the refusal of the court to instruct the jury as follows: "If the jury believe, from the evidence, that the defendant is simply a woman of loose morals herself, and lives alone and admits one man or many to illicit intercourse with her, she does not keep a bawdy-house; for more women than one must live or resort together to make such a house, and whatever be the reputation of the house in which she resides, if it is a proven or admitted fact that the defendant

lives alone, no other women residing or living in or resort-
ing to the same house, the jury will find the defendant not
guilty."

The foregoing instruction is in part correct, and in part
erroneous, and the erroneous matter is so mixed with that
which is law, that the whole, taken together, was calculated
to mislead the jury.  Among other things asked for in the
foregoing instructions, defendant asks the court to instruct
that more women than one must live or resort together to
make such a house.  This is not the law, and is calculated
to destroy the effect of all that preceded it.  The court,
therefore, wisely rejected the whole instruction.

A bawdy-house is defined to be a house of ill-fame, kept
for the resort and convenience of lewd people of both sexes.
The residence of an unchaste woman, a simple prostitute,
does not become a bawdy-house, because she may habitu-
ally admit one or many men to an illicit cohabitation with
her.  The common law did not undertake the corrections in
such cases, but left the parties to spiritual supervision
and penances.  (*State* v. *Evans*, 5 Ired. N. C. 603.)  But
although a person be only a lodger and have but a single
room, yet if she make use of it to accommodate people in
the way of a bawdy-house, it will be a keeping of a bawdy-
house as much as if she had a whole house.  (*Rex* v. *Pier-
son*, 2 Lord Raym; 1191; 1 Salk. 382.)

The judgment made and entered in this case is faulty in
many particulars.  1. It does not show the particular offense
of which she was convicted.  2. It does not fix the extent
of punishment.  3. She is committed until both fine and
costs be paid.

The judgment ought to have been substantially in the
following form: Now, therefore, the defendant having been
convicted of a misdemeanor, in keeping a bawdy-house, it
is hereby considered and adjudged, that the defendant,
Flora Buchanan, do pay a fine of one hundred and ten dol-
lars, or in default of such payment, that she be imprisoned
in the county jail of Ada county for a period not exceeding
fifty-five days.  It is further adjudged that the said defend-

44

ant, Flora Buchanan, pay the costs of this prosecution to be taxed, and that execution issue therefor.

It is therefore ordered that this cause be remanded, and that the judgment thereon be reformed in accordance with this opinion.

HOLLISTER, C. J.   I concur in the judgment of the court, but in some of the views expressed by the majority as to the construction of the act of the legislature passed January 12, 1877, entitled, "An act relating to houses of ill-fame in Boise city," I find myself unable to agree with the majority.   In my dissenting opinion in the case of *Ah Ho* v. *The People etc.*, decided at the present term, I have gone pretty fully over the grounds, upon which I differ with the majority in this case, and I do not deem it necessary to repeat what I have already said.

It is sufficient for my present purpose to say, that until the corporation of Boise city have done some act under the power conferred by section 1 of the act referred to, which is inconsistent with the common law, the latter is not repealed.   If they, as is claimed, have passed an ordinance suppressing bawdy-houses within the city limits, and prescribed a punishment for its violation, or should they hereafter do so, still the common law is in force, and a person may be punished as at common law, and also under the ordinance.   The act is not limited in its operation in any portion of the city until such limitation is fixed by a by-law making bawdy-houses lawful within the city, or some portions thereof.   If the corporation shall fix the location where such houses may be kept, in such portions, the statute becomes inoperative, but only to that extent; but when the by-law does no more than does the comon law in relation to the subject, it is to be considered only as an affirmance of the latter, and the remedy given by the by-law merely cumulative.   See authorities quoted in my dissenting opinion referred to above.