## THE PEOPLE v. HELEN GASTRO.

*Criminal law—Statements of respondent—Charge to jury—Keeping house of ill fame—Evidence—Construction of words.*

1. A statement made by a prisoner to a sheriff without question or suggestion on his part, and entirely of the prisoner's own offer, if material, is admissible as evidence on the trial.

2. Where, on the trial of a respondent for keeping a house of ill fame, a witness testifies to her calling a certain inmate "a pimp" or "her pimp," it is error for the court to determine which language was used, that being a question for the jury.

3. Words sometimes acquire a peculiar significance in a particular locality, but the court cannot take judicial notice of such fact.

4. Courts will take judicial notice of the ordinary meaning of English words, but not of uncommon or extraordinary meanings applied in isolated cases or in particular localities.

5. The word "pimp" is not a technical one, nor has it acquired any peculiar or appropriate meaning in the law, and is therefore to be construed and understood according to the common and approved usage of the language. How. Stat. § 2.

6. It is error for the court to point out particular testimony, and instruct the jury that, if they believe it, it is "pretty strong evidence" in favor of the guilt of the accused, without cautioning them not to be influenced by such opinion, and instructing them that they are the exclusive judges of the weight of the testimony, and of what facts it tends to establish.

7. The weight to be given to testimony, and all inferences to be drawn therefrom, is exclusively for the jury; and it is error for the court to weigh the testimony for them, or draw inferences from it.

8. The statute punishing the keeper of a house of ill fame is designed to prohibit the keeping and maintaining of houses which persons are permitted to frequent for the purpose of unlawful sexual intercourse.

9. A single act of lewdness or prostitution will not constitute the offense of " keeping a house of ill fame;" but, if the place where such act occurs is shown to be such a house, resorted to for such purpose, proof of such single act is sufficient upon this branch of the case.

Error to Gogebic. (Williams, J.) Argued April 24, 1889. Decided June 7, 1889.

Respondent was convicted of keeping a house of ill fame. Reversed and new trial granted. The facts are stated in the opinion.

*Kutts & Wilson* (*Birney Hoyt*, of counsel), for respondent.

*S. V. R. Trowbridge*, Attorney General, and *Charles M. Howell*, prosecuting attorney, for the People.

CHAMPLIN, J. The respondent was charged with unlawfully keeping and maintaining a house of ill fame, resorted to for the purpose of prostitution and lewdness, contrary to the statute, at the village of Bessemer, Gogebic county. She was convicted, and sentenced to be imprisoned in the Detroit house of correction for 18 months at hard labor.

The prosecution called witnesses, and was permitted, against the objections of the attorneys for respondent, to prove the character of the house occupied by her, from what they had heard, for a long space of time. The respondent's attorneys insisted that the proofs should be confined to the day named in the information, but—

" The court ruled the testimony must show the offense

charged was committed on the day laid; but, as bearing upon that question, evidence was admissible, and would be received, as to the time within one week of that alleged."

There was no error in permitting the testimony as to the ill fame of the house to extend back one week or even longer if the respondent was the keeper of the house during that time. The court rightly held that the proof must show that the offense was committed on the day alleged in the information, the elements of the offense being—

1. That it was a house of ill fame.
2. That the respondent kept it.
3. That it was resorted to for the purpose of prostitution and lewdness.

The testimony to establish the fact that the house was resorted to for the purpose of prostitution and lewdness consisted of that given by David F. Foley, George Hogle, and Floyd C. McIntyre, who each testified to the bad reputation of the house, and that they went to her house together in the night-time a few days before her arrest, and found respondent there, and a man by the name of Martin; that they were not in bed; that Martin made his home at said respondent's house; that they also found one other woman at respondent's house, who was in bed with a man whom they had known for some length of time as a single man, although they would not swear that he had not married the woman before such night, but they did not think he had done so; that the woman and man got up, and she used some indecent language.

Hogle testified that respondent called said Martin "a pimp," or "her pimp," and also called him and others "pimps."

The witness Foley was sheriff, and testified to certain admissions made by the respondent after the arrest, and while she was imprisoned in jail. These were objected to as not having been made voluntarily. In reply to a question from the

75 Mich.—9.

court, the witness stated that such statement was made without question or suggestion, and was entirely of her own offer. He thereupon testified that respondent stated to him that she kept a whore-house.

The bill of exceptions contains the statement that—

"The above were all the witnesses sworn on the trial of the cause, and the foregoing is the substance of all the evidence on the part of the prosecution."

There was no error in admitting the testimony of the sheriff as to respondent's admissions.

The circuit judge in charging the jury said:

"We have some testimony with reference to the language which was used in the house, as to what the characters of the inmates were,—whether they were prostitutes or not. We have the testimony of one witness who says that this respondent made the remark that this man, whatever his name is, was 'her pimp.' We all know what that is when we are outdoors, and we should know what it means when we are here, just as well as when we are outdoors. We know, as a matter of fact, that it is a man who has intercourse with a loose woman, and usually she is taking care of him,—supporting him. When she says such a man is 'her pimp,' that is what she means. Well, there is a case of unwarranted sexual intercourse if you believe that to be true.

"Now, under the testimony we have the girl there; and there is testimony of one or more witnesses tending to show that the respondent, on a certain occasion just after this woman was caught in bed with a man not her husband, made the remark to her that she was a whore. There is some evidence of that kind. Now, language of that kind, made use of by the respondent herself to this woman, would be pretty strong evidence against her that that other woman was a whore, and that she had such a kind of a house there. It is her own statement as to what the character of the woman was; and being her own house, if she had that kind of a woman around there habitually, and they frequented it (they certainly, according to the evidence, frequented it at one time), you have a right to consider that as pretty strong evidence as bearing upon the character of the people who come to that house.

"There is evidence by Mr. Foley, by which he swears that

she said she kept a whore-house. Now it is for you to say whether she told him that or not. If you believe that she did tell Mr. Foley that she kept a whore-house, that is very strong evidence in favor of the guilt of this woman. People do not usually admit themselves guilty of crime when they are not guilty. It is more usual to deny it, and they most always do deny it. If a man, charged with crime, admits that he is guilty of it, it is pretty conclusive evidence, and evidence sufficient for you to act upon in finding him guilty. It is evidence, at least, that I should not fail to act upon if I was on the jury."

The court committed several errors in giving the above instructions. The testimony of Hogle was that the respondent called the man Martin " a pimp," or " her pimp," and also called Hogle and others "pimps." The court was not warranted in determining the language used by her, and applying it to Martin as " her pimp." It was for the jury to say whether she called Martin " a pimp," or called him "her pimp."

The circuit judge assumed that she called him " her pimp," and then proceeded to define the word " pimp," which definition differs essentially from the common acceptance of the term as defined by lexicographers. Worcester defines it as—

" One who provides gratifications for the lust of others; a procurer; a panderer."

Webster's definition is the same. The circuit judge says a pimp—

" Is a man who has intercourse with a loose woman, and usually she is taking care of him,—supporting him."

Words sometimes acquire a peculiar signification, in a particular locality, different from their ordinary meaning, but, when such is the case, it is a fact requiring proof, and not a fact which the court can take judicial notice of; the rule being that courts will take judicial notice of the ordinary meaning of English words, but not of uncommon or extra-

ordinary meanings applied in isolated cases or in particular localities. The word "pimp" is not, so far as we are informed, a technical word, nor has it acquired any peculiar or appropriate meaning in the law. It is therefore to be construed and understood according to the common and approved usage of the language. How. Stat. § 2.

The court, after affixing a definition, proceeded to draw an inference from the testimony, both as to what the respondent meant and as to the fact established by it, namely, that it was a case of unwarranted sexual intercourse. In this he usurped the province of the jury.

The circuit judge also erred in pointing out particular testimony, and instructing the jury, if they believed it, that it was "pretty strong evidence," and "very strong evidence," in favor of the guilt of the accused; and, with reference to some of the evidence, that—

"It is evidence, at least, that I should not fail to act upon if I was on the jury."

Nowhere in his charge does he caution the jury not to be influenced by his individual expression of opinion, or tell them that they are the exclusive judges of the weight of the testimony, and of what facts it tends to establish. We cannot say that they were not influenced by his opinions upon the weight of the evidence, or that they distinguished between the judge's instructions as to the law, which they were in duty bound to follow, and his opinion upon the weight and tendency of the evidence, which they were to determine.

It has been repeatedly held by this Court that the weight to be given to the testimony, and all inferences to be drawn therefrom, is exclusively for the jury, and that it is error for the court to weigh the testimony for them, or draw inferences from it. While we have held that a circuit judge may express his opinion upon the weight to be given to certain testimony, where he at the same time fully instructs the jury that they are the exclusive judges of the weight of the tes-

timony and of the credibility of the witnesses, yet the tenor of our decisions is to the effect that it is not a practice that should be generally indulged in; and many cases have been reversed upon this ground. *Perrott v. Shearer*, 17 Mich. 48; *Knowles v. People*, 15 Id. 408, 412; *Welch v. Ware*, 32 Id. 77; *Blackwood v. Brown*, Id. 104; *Richards v. Fuller*, 38 Id. 653, 657; *Hall v. People*, 39 Id. 717; *Beurmann v. Van Buren*, 44 Id. 496 (7 N. W. Rep. 67); *People v. Lyons*, 49 Id. 78, 82 (13 N. W. Rep. 365).

The counsel for defendant requested the court to charge the jury that " a single act of illicit intercourse is not sufficient to convict." In *O'Brien v. People*, 28 Mich. 213, it was held that the language of this statute refers to persons of bad character, and the word " resorted " implies that the house was visited frequently by that class of persons; and hence it is argued that, as the testimony in this case shows only a single instance of a person being found in the house, in the absence of testimony that men were seen resorting there, the offense was not made out. It has been held that a single act of prostitution, or habitual acts by one person, do not constitute the house bawdy. *Com. v. Lambert*, 12 Allen, 177; *State v. Evans*, 5 Ired. 603; *State v. Garing*, 75 Me. 591.

In *Com. v. Lambert* the court said that the permission, by the keeper of a house, of a single act of illicit intercourse within it does not of itself constitute the offense described in the statute.

" To hold that it did, would be to leave wholly out of view the meaning of the phrase ' resorted to,' as used in those sections of the statute."

The statute is designed to prohibit the keeping and maintaining of a house which persons are permitted to frequent for the purpose of unlawful sexual intercourse, and to prevent the existence of such places of resort. A single act of lewdness or prostitution would not constitute the offense

which the statute prohibits and punishes; but, if the house is shown to be a house of ill fame, and it is also shown that persons resort there for the purpose of prostitution or lewdness, proof of a single act of prostitution would be sufficient upon this branch of the case.

I do not decide that it is necessary to show an actual illicit intercourse. If it be shown that the inmates are prostitutes, or the house is the resort of prostitutes, and males are seen frequenting the house at night, evidence of these and kindred facts might be sufficient to satisfy a jury that the house was resorted to for the purpose of prostitution. Under the testimony appearing in this case the request should have been given.

The judgment must be reversed, and a new trial is granted.

MORSE, CAMPBELL, and LONG, JJ., concurred. SHERWOOD, C. J., did not sit.