(92 App. Div. 243.)

PEOPLE ex rel. STEPHENSON v. GREENE, Police Com'r.

(Supreme Court, Appellate Division, First Department. March 11, 1904.)

1. CERTIORARI—DISMISSAL FROM POLICE FORCE—QUESTIONS REVIEWABLE.
   Under the express provisions of Code Civ. Proc. § 2140, it is the duty of the Appellate Division, on certiorari, to determine whether there was any competent proof of all the facts necessary to authorize the decision made, and, if so, whether such a preponderance of proof was against the decision that a similar verdict of a jury would be set aside as against the weight of the evidence.

2. SAME—PERMITTING HOUSES OF PROSTITUTION—EVIDENCE—SUFFICIENCY.
   On certiorari to review relator's dismissal from the police force, evidence held insufficient to show that a house which relator permitted to exist in his district was a house of prostitution.

3. SAME—SUSPICIOUS PLACES—DISCRETION OF CAPTAINS.
   Police department rule 44, par. "b," requiring police captains to transmit monthly reports of the location of suspicious places, vests in such captains a discretion in determining what is a suspicious place, which discretion must be exercised with regard to evidence.

4. SAME—EVIDENCE—SUFFICIENCY.
   On certiorari to review relator's dismissal from police force, evidence held insufficient to show that a house not reported by relator as a suspicious place was such a place, so as to show relator guilty of making false reports.

Certiorari by the people, on the relation of John T. Stephenson, against Francis V. Greene, as police commissioner of the city of New York, to review the dismissal of relator from the police force of said city. Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Frank S. Black, for relator.

Terence Farley, for respondent.

McLAUGHLIN, J. The relator, a police captain assigned to duty in the Eleventh Precinct in the city of New York, was on the 9th of December, 1902, charged by the police commissioner and by the senior police inspector with (1) conduct unbecoming an officer; (2) conduct injurious to the public peace and welfare; (3) neglect and disobedience of orders and of the rules and regulations of the police department; (4) neglect of duty; (5) making false reports, under rule 44, par. "b." The charges contained three specifications, which were, in substance: (1) That from the 6th of August, 1902, to the date the charges were made, he suffered and permitted six houses of prostitution, the street numbers of which were given, to be kept and maintained in the district to which he was assigned; (2) that during the same time, at four places, the street numbers of which were given, he permitted persons to traffic in intoxicating liquors without a liquor tax certificate, in violation of section 11, subd. 1, of the liquor tax law (Laws 1896, p. 51, c. 112); (3) that during the same time he "had reasonable grounds for suspicion" that violations of law were occurring and were planned to occur at eight places, designated by street numbers, and that it was his duty, under the rules and regulations of the police department, to report them as suspicious places in the monthly reports made by him for September, October, November, and December, which he failed and neglected to do, and thereby concealed from his superior officers the fact that such places were suspicious.

Upon the charges stated, as supplemented by the specifications indicated, the relator, after a trial had before the first deputy commissioner, was found guilty, and by the police commissioner dismissed from the police force. The relator thereupon obtained a writ of certiorari for the purpose of having the proceedings which resulted in his dismissal reviewed by this court. The statute gives him the right to this review. Code Civ. Proc. 1888, c. 16, tit. 2, art. 7. And it also limits the review to certain questions, among which is a determination of whether there was any competent proof of all the facts necessary to be proved in order to authorize the making of the determination, and, if so, whether there was "upon all the evidence such a preponderance of proof against the existence of any of these facts that the verdict of a jury affirming the existence thereof rendered in an action in the Supreme Court, triable by a jury, would be set aside by the court as against the weight of evidence." Section 2140, Code Civ. Proc. It is our duty, therefore, in reviewing the proceedings, to determine in the first instance whether there was any competent proof of all the facts necessary to be proved to justify the conviction, and, if

so, then to determine whether there was such a preponderance of evidence against the determination of the commissioner as would necessitate setting aside the verdict of a jury, as against the weight of evidence, had a jury found the existence of such facts in an action in the Supreme Court. People ex rel. McAleer v. French et al., 119 N. Y. 502, 23 N. E. 1058. Mindful of the duty thus imposed, we have carefully examined the record, and after such examination the court is unanimously of the opinion that the findings of the commissioner are so manifestly against the weight of evidence that the same must be set aside.

Having reached this conclusion, it would serve no good purpose to set out at length the evidence bearing upon such charges, except in so far as the same relate to one house, No. 73 Elizabeth street; it being strenuously urged that as to this house, at least, the evidence was sufficient to justify the relator's dismissal. It is sufficient to say that the evidence did not establish that houses of prostitution had been kept and maintained at the times and places stated, or that there had been any dereliction of duty on the part of the relator with reference to such houses. And as to the illegal sales of liquor, the evidence established, at most, a mere technical violation, for which it would be unreasonable and unjust, under the facts proved, to hold the relator guilty of neglect of duty because he did not prevent them.

As to the commissioner's findings in so far as the same relate to 73 Elizabeth street: It will be borne in mind that the charges in this respect were that it was a house of prostitution, which the relator suffered and permitted to exist during the time stated, and that he made false reports with reference thereto, in that he did not characterize it in the monthly reports made by him for September, October, November, and December as a suspicious place. As to the character of the house, seven witnesses were produced, six of whom were detectives connected with the district attorney's office, and the seventh a police officer (none of them under the control of the relator), who testified, in substance, that on the 26th of November they, without difficulty, gained admittance to 73 Elizabeth street; that upon entering the place they were met by a woman, apparently in charge, who, upon being informed of what they desired, directed them to go to the floor above, where several women were found ready to participate in immoral acts; that they made but one visit to the place, and there was nothing in the external appearance of the building which indicated it was a disorderly house, or that illicit practices were being conducted in it, nor did the dress of the women whom they saw indicate that they were prostitutes. It did not appear when these women entered the place; how long they remained; whether they, or women of like character, had been there before or went there thereafter. The evidence, therefore, at most, simply established that on a single occasion, in a hotel, strangers, so far as appearances were concerned, were able to obtain admission to the building without difficulty, and obtain therein women for immoral purposes. This fell far short of establishing that the house was a disorderly one, where common prostitutes resorted and resided. Barnesciotta v. People, 10 Hun, 139; Com. v. Lambert, 12 Allen, 177; People v. Gastro, 75 Mich. 127, 42 N. W. 937; People v. Pinkerton, 79 Mich. 110, 44 N. W. 180; State

v. Lee, 80 Iowa, 75, 45 N. W. 545, 20 Am. St. Rep. 401; State v. Garing, 75 Me. 591. And the finding that it was a house of this character, which the relator suffered and permitted to be maintained, is not sustained by the evidence.

This brings us to a consideration of the second branch of the inquiry, and that is whether the relator was guilty of making false reports, under rule 44, par. "b," with reference to this house, in that he did not designate it in his reports as a suspicious place. This rule, in so far as the same is material to the question under discussion, provides that captains of the police force shall make, sign, and transmit monthly reports in duplicate, one copy to the police commissioner, and one copy to the first or second deputy, stating the following among other things: "(4) Location of all suspicious places and places where it is suspected that violations of the law are planned or occur." The rule is silent as to what constitutes a "suspicious place," but it is fair to assume that the same is to be determined by the exercise of good judgment and discretion on the part of the captain of the precinct, since he is required to make the report. Such judgment and discretion, however, are not a mere whim or caprice upon his part, but must have for their foundation some evidence. Otherwise it is not difficult to see how reputations might be seriously injured, and the value of property easily depreciated. This seems to have been the view entertained by the police department; because in this connection it appeared that the relator, prior to the time the charges were preferred against him, asked his superior officer, Inspector Brooks, what constituted a "suspicious place," to which the inspector replied:

"He thought the captain of the precinct should be the better judge of that; that he should be guided by the reports made to him by detectives and officers doing duty in citizens' clothes, and his personal visits to the place, whether or not it should be termed a suspicious place."

The relator himself testified that he had always considered it necessary for a captain to obtain some evidence that the law was being violated at a place before entering it upon his list as suspicious, and that was the way he had always been guided as a captain of police.

Here there is no evidence, as it seems to me, which would have justified the relator in characterizing the place in his reports for the months stated as a suspicious one. It is true, he had been told by his superior officer that complaints had been made that the house was disorderly, and he had been asked as early as August to investigate such charges and make a report, which he did, and in which he stated:

"No. 73 Elizabeth Street is a four-story building, which is a duly licensed hotel and is conducted by one Florino Capperelli. Owing to the number of complaints received against said premises, which is patronized almost exclusively by Italians, I have caused the members of my command detailed to duty in plain clothes to frequently visit the same at irregular hours of the day and night, and I have also made personal inspection of said place, and while it is barely possible that technical violations of law may occur thereat, I have been unable up to the present to secure any evidence which would justify me in taking any action against the proprietor thereof."

It also appeared that the relator detailed, from time to time, at least ten different police officers to make an investigation and report, seven

of whom testified, in substance, that under the direction of the relator they visited the house frequently, in various disguises, at different hours of the day and night. One of them stated that he gained admittance to the building from an adjoining roof, while another stated that he secreted himself within the building for a short period of time, and all of them stated that they were unable to discover any evidence that it was a disorderly house, or that disorderly practices were carried on in it. The other three were present at the trial, ready to be sworn, and it was conceded that their testimony would corroborate the testimony given by the other officers, showing active vigilance on the part of the relator to determine the character of the house and enforce the law with reference to its inmates, and his inability to obtain any evidence against it. In corroboration of these witnesses at least five others were produced, who testified, in substance, that some or all of them lodged in the building from about the 1st of September to the 1st of December, and they never saw any disorderly acts committed, nor any women in the house, except one who did the cleaning. The relator himself testified that he had made personal inspections, and he detailed at length the efforts which he had made through the officers under his command, employing "stool pigeons," obtaining officers from other precincts, and that he was unable to obtain any evidence which would have justified him in taking proceedings against the proprietor, or reporting the house as a suspicious one. Under such circumstances, I do not think it can be said that the reports which he made were false, and the finding of the commissioner that they were is against the preponderance of evidence.

In conclusion, therefore, it seems to me the findings of the commissioner, judging the relator guilty of the charges made against him, are against the weight of evidence; and for that reason the same should be set aside, the writ sustained, and the relator reinstated in his former position, with $50 costs and disbursements. All concur.