From the case of Jack v. State, 20 Tex. App. 661, we take the following:

"It seems to us that it would be a dangerous and exceedingly pernicious practice for the courts to permit the sanctity of the jury room to be invaded, and jurors to be interrogated as to the arguments used in their deliberations, and the influence of such arguments upon their minds, and the reasons and considerations upon which their verdicts were based. There might arise, perhaps, an extreme case in which such a practice would be tolerated to prevent flagrant wrong and injustice, but this court would not be willing to sanction the procedure unless it should manifestly appear that the ends of justice imperatively demanded it."

In the opinion of the writer, the question presented in the present case was determined against the appellant in Johnson's Case, supra, and others, to which reference has been made; that is to say, the true basis of the appellant's contention is that the jury in their deliberations were not governed by the directions of the court in its charge to ignore the second count of the indictment, to prove which, under the authorities mentioned, would be an impeachment of the jury, which the law does not permit. See Esquivel v. State, 93 Tex. Cr. R. 125, 246 S. W. 399.

The motion for rehearing is overruled.

———

## HARDAMAN v. STATE.  (No. 8951.)

(Court of Criminal Appeals of Texas. April 29, 1925. Appeal Reinstated June 3, 1925.)

On Motion to Dismiss.

1. **Criminal law**  1076(4)—**Appeal bond, which is invalid for failure of court to fix amount, not validated by subsequent approval.**

Where trial court had not approved form and amount of appeal bond in prosecution, as required by Code Cr. Proc. art. 918, amended by Acts 36th Leg. (1919) c. 18, § 1, set out in Vernon's Ann. Code Cr. Proc. Supp. 1922, art. 918, at time of execution, bond was invalid, and could not be validated by subsequent approval of court.

On the Merits.

2. **Disorderly house**  17—**Evidence held insufficient to sustain conviction for keeping "bawdy house."**

In prosecution for keeping bawdy house, evidence of one witness that on one occasion he paid for room at home of accused, and that

he asked for, and got, girl with whom he had intercourse, *held* insufficient to support conviction, proof of single transaction not complying with statutory definition that bawdy house is "one kept for prostitution or where prostitutes are permitted to resort or reside for purpose of plying their vocation."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Bawdyhouse.]

Commissioners' Decision.

Appeal from Tarrant County Court at Law; P. W. Seward, Judge.

Rose Hardaman was convicted of keeping a bawdy house, and she appeals. Reversed and remanded.

John W. Baskin and Sam S. Beene, both of Fort Worth, for appellant.

Tom. Garrard, State's Atty., and Grover C. Morris, Asst. State's Atty., both of Austin, for the State.

BERRY, J. Appellant was convicted in the county court at law of Tarrant county for the offense of keeping a bawdy house, and her punishment assessed at a fine of $400 and 40 days in jail.

[1] The state has filed a motion to dismiss this case on account of defects concerning the appeal bond. Art. 918, Code of Criminal Procedure, as amended by the Acts of the Thirty-Sixth Legislature, c. 18, § 1, set out in Vernon's Code of Criminal Procedure, article 918 of the 1922 Supplement, provides for bonds in this character of cases to be taken by the sheriff in an amount to be fixed by the court, which bond must be approved by either the sheriff or the judge who tried the case or his successor in office.

The record does not disclose affirmatively that the judge trying the case ever fixed the amount of the bond in any manner; but it appears that, after the bond had been executed some two days, the trial court approved it as to form and amount, and the sheriff approved it as to sureties. In the absence of an order of the court fixing the amount of the bond at the time it was entered into on the 22d day of May, 1924, the bond was invalid and not subject to forfeiture. The bond being invalid at the time it was signed by the principal and sureties, it could not subsequently be made valid by the action of the court in approving it as to form and amount. We think the contention of the state in the matter is correct, and accordingly hold that the bond is not valid, under the article of the statute above quoted. Turpin v. State, 86 Tex. Cr. R. 96, 215 S. W. 455, and authorities therein cited.

Appellant is hereby allowed 15 days from this date to file a correct appeal bond under the statute, otherwise the judgment shall become final.

Because the appeal bond is invalid, the appeal is hereby dismissed.

PER CURIAM. The foregoing opinion of the Commission of Appeals has been examined by the judges of the Court of Criminal Appeals and approved by the court.

Appeal Reinstated.

BERRY, J. This case was dismissed at a former day of this term because of a defective appeal bond. Appellant has shown to this court that the record has been corrected in this respect, and the appeal is reinstated, and the case is now properly before us for disposition.

[2] The testimony shows that on or about the 3d of April the witness Teas went to home of the defendant and asked her for a room, and asked her if she had any ladies, and she showed him a room and asked him would he like to see one of the girls and he told her, "Yes," and that immediately a girl came to his room, and he paid the appellant for the room. This witness testified that he had intercourse with the girl in said room. The record fails to disclose any other facts that would strengthen the above testimony to the effect that appellant was keeping a bawdy house.

We have therefore the question presented, "does proof of one act of illicit intercourse constitute the keeping of a bawdy house under our statutes?" The statute (Pen. Code 1911, art. 496), under which this appellant was convicted, reads as follows:

"A bawdy house is one kept for prostitution or where prostitutes are permitted to resort or reside for purposes of plying their vocation."

Under this statute, one of two things must be shown before a conviction can be sustained; first, it must be shown that the house in question is a house of prostitution, or second, it must be shown that it is a house where prostitutes are permitted to resort or reside for the purpose of plying their vocation. Proof of either of these facts, under our statute, will constitute an offense. But neither of the constituents of the offense of keeping a bawdy house can be sustained by proof of a single act of prostitution in the house in question. People v. Gastro, 75 Mich. 133, 42 N. W. 937; People v. Buchanan, 1 Idaho, 681.

A similar question was decided in the Buchanan Case, supra. Under the Idaho statute, a bawdy house was defined to be a house of ill fame kept for the resort and convenience of lewd people of both sexes. Under that statute, the Supreme Court of Idaho held that the residence of an unattached woman, who is a prostitute, does not become a bawdy house, because she may have admitted one man to an illicit cohabitation with her. The court in that case said:

"The common law did not undertake the corrections in such cases, but left the parties to spiritual supervision and penances."

In Gastro's Case, supra, the Supreme Court of Michigan held that a single act of prostitution or similar acts by one person do not constitute the house a bawdy house.

In this case, the facts show nothing more than the meeting one time of one couple in the house in which the appellant lived, and, under the authorities above cited, as well as on the reason of the thing, we hold that this single transaction is not sufficient to show either that the house in question is a house of prostitution, or that it is a house where prostitutes are permitted to resort or reside for the purpose of plying their vocation.

Because the facts are wholly insufficient to support the verdict, it is our opinion that the judgment should be reversed, and the cause remanded.

PER CURIAM. The foregoing opinion of the Commission of Appeals has been examined by the judges of the Court of Criminal Appeals, and approved by the court.