CORRIGAN, J.
(concurring in part and dissenting in part). I concur with the majority’s ruling that MCL 333.7405(l)(d), which forbids a person from “keep[ing] or maintaining]” a vehicle that is used for keeping or selling controlled substances, does not require the prosecution to show that the defendant’s actions occurred “continuously for an appreciable period,” as stated in People v Griffin, 235 Mich App 27, 32; 597 NW2d 176 (1999).
I part company with the majority because it has violated a cardinal rule of statutory construction. Fundamentally, the majority has disregarded the Legislature’s choice of the disjunctive term “or” (“keep or maintain”) and effectively substituted the conjunction “and” (“keep and maintain”). It has achieved this override of the Legislature’s choice by defining the *162 common terms “keep” and “maintain” as synonymous when they also have different and distinct dictionary definitions.
I also dissent from the majority’s holding that “the statute precludes a conviction for an isolated incident without other evidence of continuity....” Ante at 148. By requiring “evidence of continuity” to prove the crime, the majority has essentially adopted the Court of Appeals holding in Griffin that the prosecution must show that the defendant’s actions occurred “continuously for an appreciable period.” It has merely deleted the “appreciable period” component of the continuity requirement. In my view, the majority continues to give offenders a “free pass.” Instead, I would hold that evidence of an isolated incident of using a vehicle for keeping or selling controlled substances is sufficient to give rise to criminal liability under the unambiguous language of the statute if the offender keeps the vehicle by retaining it in his possession or power.
The first step we take in determining the Legislature’s intent is to examine the plain language of the statute. People v Anstey, 476 Mich 436, 442-443; 719 NW2d 579 (2006). MCL 333.7405(l)(d) provides, in pertinent part, that a person “[sjhall not knowingly keep or maintain a. . . vehicle... that is used for keeping or selling controlled substances in violation of this article.” The words “keep” and “maintain” are common words that can be given distinct meanings. Therefore, a lay dictionary should be used to define these words. See Horace v City of Pontiac, 456 Mich 744, 756; 757 NW2d 762 (1998) (“[W]hen considering a nonlegal word or phrase that is not defined within a statute, resort to a layman’s dictionary such as Webster’s is appropriate. This is because the common and approved usage of a nonlegal term is most likely to be *163 found in a standard dictionary and not a legal dictionary.”). In ascertaining the common and ordinary meaning of a statutory term, a court should determine the meaning of the term at the time the statute was enacted, and may consult dictionaries from that time to determine that meaning. Cain v Waste Mgt, Inc (After Remand), 472 Mich 236, 247; 697 NW2d 130 (2005).
The majority avoids the plain meaning of the text of the statute by declaring that the words “keep” and “maintain” are synonymous. The lay dictionary definition of “maintain” is “to keep in an existing state.” Webster’s Ninth New Collegiate Dictionary (1987), p 718.[1] The majority selects one definition of “keep” from the many available dictionary definitions, and declares that the word “keep” is synonymous with the word “maintain.” But construing the terms as synonymous disregards the Legislature’s use of the disjunctive term “or.”[2] By using the disjunctive, the Legislature defined two separate ways of committing this crime.[3] In order to give meaning to the term the Legislature employed, the statute must be construed to give the words “keep” and “maintain” distinct meanings. To hold otherwise violates “ ‘the fundamental rule of [statutory] construction that every word should be given meaning and no word should be treated as surplusage or rendered nugatory if at all possible.’ ” Pittsfield Charter Twp v Washtenaw Co, 468 Mich 702, 714; 664 NW2d 193 *164 (2003), quoting Feld v Robert & Charles Beauty Salon, 435 Mich 352, 364; 459 NW2d 279 (1990). By holding that the words “keep” and “maintain” are interchangeable, the majority fails to give meaning to the Legislature’s clear intent to give variant meaning to the two words. Additionally, by using synonymous definitions of “keep” and “maintain,” the majority renders one of these two words mere surplusage.[4]
The dictionary also defines “keep” as “to retain in one’s possession or power.” Webster’s Ninth New Collegiate Dictionary (1987), p 658. This definition of “keep” is not synonymous with “maintain,” is a commonly understood meaning of the word, and is appropriate in the context of the statute. Thus, we should employ this definition in interpreting the statute. Using this definition of “keep,” the majority correctly concludes that the Court of Appeals, in Griffin, supra at 32, added an element to the statutory language by requiring the prosecution to show that the defendant’s actions oc *165 curred “continuously for an appreciable period.” But the majority incorrectly holds that the word “keep” requires the prosecution to provide some evidence of continuity. I disagree that the word “keep,” as defined above, “implies usage with some degree of continuity that can be deduced by actual observation of repeated acts or circumstantial evidence ....” Ante at 155. In arguing that the above definition of “keep” requires continuity, the majority consults Random House Webster’s College Dictionary (1991), which defines “retain” as “to continue to use.” But Webster’s Ninth New Collegiate Dictionary (1987) defines “retain” as “1 a: to keep in possession or use ... 2: to hold secure or intact.” Id. at 1006. Neither of these definitions from Webster’s Ninth New Collegiate Dictionary (1987) requires continuity. Thus, I cannot agree with the majority that “keep” or “retain” requires continuity.
Under the above definition of “keep,” the prosecution need only show that the defendant retained a drug vehicle in his possession or power. This could mean, for instance, that the defendant just began using the vehicle to keep drugs earlier that day. The focus should not be on how long the defendant kept drugs in the vehicle or sold the drugs from the vehicle; if a defendant uses a vehicle even one time for such a purpose, he has retained a drug vehicle in his possession, i.e., “kept” a drug vehicle. The focus should instead be on the degree of the defendant’s control or use of the vehicle in connection with the storage or selling of drugs. See People v Bartlett, 231 Mich App 139, 152; 585 NW2d 341 (1998) (a person may be deemed to keep or maintain a drug house if that person has the ability to exercise control or management over the house).
I further disagree with the majority’s reliance on People v Gastro, 75 Mich 127; 42 NW 937 (1889), for the *166 proposition that “keep or maintain” in MCL 333.7405(l)(d) requires more than an isolated incident. In Gastro, the defendant was convicted of unlawfully keeping a house of ill fame. In holding that a single act of prostitution will not always be sufficient to support a conviction under the statute, the Gastro Court did not even cite the statutory language, let alone engage in an analysis of the meaning of the word “keep.”[5] Rather, the Court discussed the meaning of the statutory phrase “resorted to” and the purpose of the statute. Id. at 133. Further, MCL 333.7405(l)(d) is an almost verbatim adoption of a provision of the Uniform Controlled Substances Act (UCSA) effective at the time. It is doubtful that the Legislature considered a nineteenth century case involving a conviction for keeping a house of ill fame when it adopted the UCSA provision that prohibits keeping or maintaining a drug vehicle.
The majority also relies heavily on other states’ interpretations of their own similar statutes. By doing so, the majority is distracted from the text of our own statute and led astray by other states’ interpretations of their own similar statutes. The majority defends its reliance on cases from other states by pointing to two provisions of the Public Health Code that require other provisions of the code to be construed to achieve uniformity and consistency with other states. MCL 333.7121(2);® MCL 333.111K1).[6]
[7] But these statutes do not require us to conform to other states’ interpretations of statutes with different language when such *167 interpretations would be contrary to the plain language of our own statute. Nor do they require us to adopt other states’ erroneous interpretations of their own substantially similar statutes. If this were the case, we would simply do a “head count” of decisions from other states and follow the majority of states regardless of whether those decisions are correct. MCL 333.7121(2) or MCL 333.1111(1) does not require such a result.
Further, “[o]nly where the statutory language is ambiguous may a court properly go beyond the words of the statute to determine legislative intent.” People v Borchard-Ruhland, 460 Mich 278, 284-285; 597 NW2d 1 (1999). If the language of the statute is unambiguous, this Court applies the statute as written, and judicial construction is neither necessary nor permitted. Id. at 284. MCL 333.7121(2) and MCL 333.1111(1) govern judicial construction of statutes in the Public Health Code, which is not permitted when the statute at issue is unambiguous.[8] The majority does not identify an ambiguity in MCL 333.7405(l)(d). Because the language of MCL 333.7405(l)(d) is unambiguous, the above “uniformity” statutory provisions do not apply, and this Court must apply the plain language of MCL 333.7405(l)(d) as written, without regard to how other states have construed their similarly worded statutes.[9]
*168 In addition to failing to apply the plain language of the statute, the majority creates practical problems by giving defendants a “free pass” from conviction for keeping or maintaining a drug vehicle. The obvious purpose of the statute is to prevent the use of vehicles to transport or sell drugs. That purpose is not served by exempting individual violations. Under the majority opinion, as long as the suspect is careful not to carry any other drug paraphernalia or other indications of continuity, the suspect need not fear that he will be convicted of keeping or maintaining a drug vehicle if caught for the first time. The majority opinion will encourage the police to allow the use of a vehicle to store or sell drugs until the officers decide that they have enough evidence to sustain a conviction under MCL 333.7401(l)(d) for continuous activity. The language of the statute makes clear that the Legislature did not intend such a result. Rather, the Legislature intended to permit the police to arrest a suspect for violating MCL 333.7405(l)(d) without fear that the arrest came too soon for them to accumulate evidence to support such a conviction.
By holding that the prosecution must show “evidence of continuity,” the majority largely reiterates the Court of Appeals holding in Griffin, supra at 32, that the prosecution must show that the defendant’s actions occurred “continuously for an appreciable period” but without the “appreciable period” component. The Grif *169 fin standard similarly requires evidence of continuity, so how is the majority’s standard meaningfully different?[10] I question why this Court has granted leave to appeal and overruled Griffin just to reach a legal conclusion almost identical to the case it is overruling. The majority correctly recognizes that Griffin was wrongly decided and strikes the erroneous language of that decision, but then falls into the trap of repeating the Griffin panel’s mistake.
Because evidence of an isolated incident of using a vehicle to keep or sell drugs is sufficient to support a conviction for keeping or maintaining a drug vehicle when the defendant retains the vehicle in his possession or power, and the prosecution clearly presented evidence that defendant kept the vehicle and used it for selling or keeping drugs, there was sufficient evidence to support defendant’s conviction. I would vacate the judgment of the Court of Appeals and reinstate defendant’s conviction for keeping or maintaining a drug vehicle under MCL 333.7405(l)(d).
YOUNG, J., concurred with CORRIGAN, J.

 None of the other definitions of “maintain” is appropriate in the context of the statute.

 Webster’s Ninth New Collegiate Dictionary (1987), p 829, offers the following relevant definition of “or”: “used as a function word to indicate an alternative.”

 Had the Legislature intended that the words “keep” and “maintain” have one meaning, it would not have used two words separated by “or,” but instead would simply have used one word or the conjunctive word “and.”

 This is one of the reasons why cases from sister states, including Dawson v State, 894 P2d 672 (Alas App, 1995), are not particularly helpful. These cases, like the majority in the instant case, fail to apply the plain language of the statute and fail to differentiate between the words “keep” and “maintain.” Further, many cases from other states also require the prosecution to show that the defendant kept or maintained the vehicle or house for the purpose of keeping or selling controlled substances. See, e.g., Barnes v State, 255 Ga 396, 402; 339 SE2d 229 (1986) (“[I]n order to support a conviction under § 16-13-42 (a) (5) for maintaining a residence or other structure or place used for keeping controlled substances, the evidence must show that one of the purposes for maintaining the structure was the keeping of the controlled substance.”). No language in our own statute requires the prosecution to prove that the vehicle was used for the purpose of keeping or selling controlled substances. The only mention of “purpose” in MCL 333.7405(l)(d) refers to the preceding clause of the statute providing that a person may not maintain a vehicle “that is frequented by persons using controlled substances in violation of this article for the purpose of using controlled substances ....” That clause is not at issue in the instant case.

 In fact, the Court referred to the crime as “unlawfully keeping and maintaining a house of ill fame,” id. at 128 (emphasis added), although the statute did not use the words “and maintaining.” 1887 PA 34.

 MCL 333.7121(2) provides: “This article shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this article among those states which enact laws similar to it.”

 MCL 333.1111(1) provides: “This code is intended to be consistent *167 with applicable federal and state law and shall be construed, when necessary, to achieve that consistency.”

 I offer no opinion regarding whether MCL 333.7121(2) or MCL 333.1111(1) violates the separation of powers doctrine by effectively instructing courts regarding how to exercise their judicial power to construe statutes.

 The “uniformity” statutory provisions of MCL 333.7121(2) and MCL 333.1111(1) are similar to statutory provisions requiring that a statute be broadly or liberally construed. For example, MCL 333.1111(2) provides that the Public Health Code “shall be liberally construed for the protection of the health, safety, and welfare of the people of this state.” *168 This type of statutory provision does not allow courts to interpret statutes in a manner inconsistent with the plain statutory language, but acts only as a legislative guide to help resolve ambiguous statutory language. See Paschke v Retool Industries, 445 Mich 502, 511; 519 NW2d 441 (1994) (“Where the statutory language is clear, the courts should neither add nor detract from its provisions. Nevertheless, where ambiguity exists, and judicial interpretation is needed, the act should be liberally construed .... [emphasis added].).

 The dictionary definition of “continuity” is, in pertinent part, as follows: “1. the state or quality of being continuous. 2. a continuous or connected whole.” Webster’s Universal College Dictionary (1997), p 176.