PEOPLE v GRIFFIN

Docket No. 205378. Submitted February 2, 1999, at Lansing. Decided April 6, 1999, at 9:10 A.M. Leave to appeal sought.

Darryl K. Griffin was convicted by a jury in the Saginaw Circuit Court, Robert L. Kaczmarek, J., of three counts of delivery of less than fifty grams of cocaine and single counts of possession with intent to deliver less than fifty grams of cocaine, conspiracy to deliver cocaine, and maintaining a drug house. The defendant appealed, alleging several errors.

The Court of Appeals *held*:

1. The prosecution presented sufficient evidence that the defendant maintained a drug house and possessed cocaine with the intent to deliver it to support those convictions.

2. To keep or maintain a drug house, it is not necessary that the defendant own or reside at the property. A defendant may be found to have kept or maintained a drug house where the defendant simply exercised authority or control over the property for purposes of making it available for keeping or selling proscribed drugs and did so continuously for an appreciable period. Here, the evidence supports the finding that the defendant exercised control over the premises for the purpose of trafficking in cocaine during the relevant several months.

3. The evidence supports the finding that the prosecution presented sufficient evidence to meet the element of possession with regard to the charge of possession with intent to deliver.

4. The court properly found that a prosecution witness' brief mention before the jury that the defendant had been incarcerated before did not warrant a mistrial. The remark was volunteered by the witness, who had been instructed by the prosecution not to divulge the information, in response to a proper question. The court did not err in failing to give a curative jury instruction, which was not requested by the defendant.

5. The court did not err in allowing the prosecution to introduce proper rebuttal evidence that could also have been introduced in its case in chief.

6. The court did not abuse its discretion in declining to give a special jury instruction regarding the credibility of an addict-

informer. It was not clear that the relevant witness was an addict at the time in question and the witness' testimony was not the only evidence linking the defendant to the offenses.

7. Although part of the affidavit in support of the search warrant contained misinformation, the remainder of the affidavit supports the issuance of the search warrant. The evidence seized pursuant to the warrant was properly admitted.

8. Because the defendant failed to identify any seriously prejudicial errors concerning the introduction of the evidence, his argument that the cumulative effect of any such errors denied him a fair trial is without support.

9. A curative instruction, if requested by the defendant, would have counteracted any slight prejudice the defendant may have suffered from the prosecution's improperly bolstering the credibility of a witness. No manifest injustice will result from the failure to review this issue further on appeal.

Affirmed.

1. CONTROLLED SUBSTANCES — KEEPING OR MAINTAINING A DRUG HOUSE.

It is not necessary that a defendant own or reside at a drug house in order to be convicted of keeping or maintaining a drug house; the defendant may be convicted on the basis of having exercised authority or control over the property for purposes of making it available for keeping or selling proscribed drugs and having done so continuously for an appreciable period (MCL 333.7405[d]; MSA 14.15[7405][d]).

2. CONTROLLED SUBSTANCES — POSSESSION — CONSTRUCTIVE POSSESSION.

A defendant's presence at a location where controlled substances are found is, by itself, insufficient to prove the defendant's constructive possession of the substances; constructive possession may be found where the totality of the circumstances indicates a sufficient nexus between the defendant and the substances.

3. CONTROLLED SUBSTANCES — POSSESSION.

Possession of a controlled substance may be actual or constructive; the essential question is whether the defendant had dominion or control over the controlled substance; the defendant need not have actually owned the controlled substance to have possessed it, and may possess the substance jointly with one or more others.

4. TRIAL — WITNESSES — MISTRIAL — INAPPROPRIATE SUBJECT MATTER.

Not every instance of mention before a jury of some inappropriate subject matter warrants a mistrial; an unresponsive, volunteered answer to a proper question is not grounds for the granting of a mistrial.

5. CRIMINAL LAW — EVIDENCE — REBUTTAL EVIDENCE.

> The test of whether rebuttal evidence was properly admitted is not whether it could have been offered in the prosecution's case in chief, but whether it is properly responsive to evidence introduced or a theory developed by the defendant; as long as evidence is responsive to material presented by the defense, it is properly classified as rebuttal, even if it overlaps evidence admitted in the prosecution's case in chief.

6. CRIMINAL LAW — WITNESSES — ADDICT-INFORMERS — JURY INSTRUCTIONS.

> An instruction concerning special scrutiny of the testimony of an addict-informer should be given upon request where the testimony of the addict-informer is the only evidence linking the defendant to the offense.

7. SEARCHES AND SEIZURES — SEARCH WARRANTS — FALSE INFORMATION.

> Evidence obtained pursuant to a search warrant that includes false information provided either intentionally or with reckless disregard for the truth must be suppressed if probable cause would not exist without the false information; where the affidavit has sufficient untainted information to establish probable cause, the affidavit and resulting search warrant remain valid within the scope and to the extent of the untainted information.

8. CRIMINAL LAW — EVIDENCE — EXPERTS — INDICIA OF DRUG TRAFFICKING.

> Expert testimony concerning indicia of drug trafficking that relates to the relevant issues whether the defendant is a drug dealer and whether the premises in question is a drug house, which indicia are not within the knowledge of a layperson and aid the jury in resolving those questions, is not improper drug profile evidence.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *Michael D. Thomas*, Prosecuting Attorney, and *Katherine Langevin Semel*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Chari K. Grove*), for the defendant on appeal.

Before: FITZGERALD, P.J., and HOLBROOK, JR., and O'CONNELL, JJ.

O'CONNELL, J. Defendant appeals as of right from his convictions of three counts of delivery of less than

fifty grams of cocaine, MCL 333.7401(2)(a)(iv); MSA 14.15(7401)(2)(a)(iv), and single counts of possession with intent to deliver less than fifty grams of cocaine, MCL 333.7401(2)(a)(iv); MSA 14.15(7401)(2)(a)(iv), conspiracy to deliver cocaine, MCL 750.157a; MSA 28.354(1), and maintaining a drug house, MCL 333.7405(d); MSA 14.15(7405)(d). We affirm.

## I. FACTS AND PROCEDURAL HISTORY

After a lengthy period of investigation and surveillance, the police conducted a search and seizure at 732 Bethany in Saginaw on the morning of August 22, 1996. Defendant was in the house at the time, having slept there the night before. On a dresser in the bedroom where defendant said that he had spent that night, the police found a quantity of cocaine in plain view alongside some personal items of defendant. According to expert testimony at trial, the amounts of cocaine and particular drug paraphernalia that the police found at the house indicated that the premises were used as a locus for drug trafficking. During the course of the investigation, an informant, operating under police supervision, purchased cocaine from defendant on April 18 and 29, and August 26, 1996, and on June 11 that year viewed defendant with some cocaine that defendant was offering for sale, each of these events occurring at the house at 732 Bethany.

This house was the residence of Tonja Simpson (Simpson), her and defendant's minor son, and Simpson's father, who was renting the house from his ex-wife. Simpson was arrested and charged along with defendant. Her case was eventually severed from defendant's, and she testified at defendant's trial pursuant to a plea agreement.

The jury found defendant guilty as charged. The trial court sentenced defendant to one to two years' imprisonment for maintaining a drug house, that sentence to run concurrently with sentences of three to forty years' imprisonment for each of the remaining five convictions, the latter all to run consecutively to each other and to a sentence for an earlier conviction.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant argues that the prosecution failed to present evidence sufficient to support his convictions of maintaining a drug house and possessing cocaine with intent to deliver it. We disagree. When reviewing the sufficiency of the evidence in a criminal case, this Court must view the evidence of record in the light most favorable to the prosecution to determine whether a rational trier of fact could find that each element of the crime was proved beyond a reasonable doubt. *People v Jaffray*, 445 Mich 287, 296; 519 NW2d 108 (1994); *People v Fetterley*, 229 Mich App 511, 515; 583 NW2d 199 (1998).

### A. KEEPING OR MAINTAINING A DRUG HOUSE

Defendant's argument concerning the conviction of maintaining a drug house hinges on the proper interpretation of the applicable statute. At the time of defendant's arrest and conviction, MCL 333.7405(d); MSA 14.15(7405)(d) stated that a person "[s]hall not knowingly keep or maintain a . . . dwelling . . . or other structure or place, which is resorted to by persons using controlled substances in violation of this article for the purpose of using these substances, or

which is used for keeping or selling them in violation of this article." Defendant does not argue that the house in question, at 732 Bethany in Saginaw, was not itself a drug house under MCL 333.7405(d); MSA 14.15(7405)(d), but argues instead that he did not "keep or maintain" the property for purposes of the statute.[1]

Statutory interpretation is a question of law calling for review de novo. *Michigan Basic Property Ins Ass'n v Ware*, 230 Mich App 44, 48; 583 NW2d 240 (1998). "The primary purpose of statutory interpretation is to ascertain and give effect to the intent of the Legislature." *Id.* at 49. "[T]he meaning of the Legislature is to be found in the terms and arrangement of the statute without straining or refinement, and the expressions used are to be taken in their natural and ordinary sense." *Gross v General Motors Corp*, 448 Mich 147, 160; 528 NW2d 707 (1995). A court should interpret a statute in the way that best advances its legislative purpose. *People v Adair*, 452 Mich 473, 479-480; 550 NW2d 505 (1996).

We hold that to "keep or maintain" a drug house it is not necessary to own or reside at one, but simply to exercise authority or control over the property for purposes of making it available for keeping or selling proscribed drugs and to do so continuously for an appreciable period. This reading of the statute com-

---

[1] Effective March 31, 1998, MCL 333.7405(d); MSA 14.15(7405)(d) was amended to identify a place that a person may not "keep or maintain" as any place "frequented by persons using controlled substances in violation of this article for the purpose of using controlled substances, or that is used for keeping or selling controlled substances in violation of this article." Because this appeal concerns the meaning of "keep and maintain," and not any of the changed statutory language, this amendment does not affect our disposition.

ports with other jurisdictions' construction of the terms "keep or maintain" as used in similar statutes.[2]

Defendant testified that he had lived with Simpson on and off, but that the night before the search was the first one that he had spent at the house since the previous January, when the couple had had a falling out. Defendant maintained that he resided at his mother's residence at the time of his arrest. Simpson testified that defendant had lived with her at the house, but that defendant moved out in May 1996. Simpson added that she and defendant were in the process of resuming their romance at the time of their arrest. According to both defendant and Simpson, defendant had no key to the house and was only an occasional visitor at the time of the police action.

This evidence viewed in the light most favorable to the prosecution indicates that defendant resided primarily at 732 Bethany as late as three months before his arrest, which period encompassed at least his first two sales of cocaine to the informant, that defendant continued to operate as a drug dealer from that house in June and August before his arrest, and that defendant spent the night before his arrest at the house and was reconciling with Simpson. The prosecutor further presented evidence that the police found men's clothing in a dresser in one of the bedrooms. Additionally, a police detective testified that during the period of surveillance he observed defendant apparently more

---

[2] See *State v Fernandez*, 89 Wash App 292, 301; 948 P2d 872 (1997) (unpublished), citing *United States v Clavis*, 956 F2d 1079, 1090 (CA 11, 1992); *Dawson v State*, 894 P2d 672, 678-679 (Alas App, 1995); *Meeks v State*, 872 P2d 936, 937-938 (Okla Crim App, 1994); *State v Allen*, 102 NC App 598, 607-608; 403 SE2d 907 (1991), rev'd on other grounds 332 NC 123; 418 SE2d 225 (1992); *Barnes v State*, 255 Ga 396, 401-402; 339 SE2d 229 (1986).

than once drive Simpson's car from work to 732 Bethany, but that he never saw defendant drive to his mother's address.

This evidence would support a factual finding that defendant actually resided at 732 Bethany for the whole time in question and certainly supports the finding that defendant exercised control over the premises for the purpose of trafficking in cocaine during those several months. Accordingly, defendant's argument that the prosecution failed to present evidence that he kept or maintained a drug house sufficient to support his conviction under MCL 333.7405(d); MSA 14.15(7405)(d) must fail.

### B. POSSESSION WITH INTENT TO DELIVER

Also without merit is defendant's argument that the prosecution failed to present sufficient evidence that he was in possession of the cocaine found at 732 Bethany to support his conviction. The elements that the prosecutor must prove to establish possession with intent to deliver less than fifty grams of cocaine include "that defendant knowingly possessed the cocaine with the intent to deliver." *People v Wolfe*, 440 Mich 508, 517; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). Possession may be actual or constructive. "The essential question is whether the defendant had dominion or control over the controlled substance." *People v Konrad*, 449 Mich 263, 271; 536 NW2d 517 (1995). One need not have actually owned the prohibited substance to have possessed it, and one may possess the substance jointly with one or more others. *Wolfe, supra* at 520. However, "a person's presence, by itself, at a location where drugs are found is insufficient to prove constructive posses-

sion." *Id.* " ' "[M]ere proximity to the drug, mere presence on the property where it is located, or mere association, without more, with the person who does control the drug or the property on which it is found, is insufficient to support a finding of possession." ' " *United States v Disla*, 805 F2d 1340, 1351 (CA 9, 1986), quoting *Murray v United States*, 403 F2d 694, 696 (CA 9, 1968), quoting *Arellanes v United States*, 302 F2d 603, 606 (CA 9, 1962).

Although none of the cocaine that the police seized on August 22, 1996, was found on defendant, "constructive possession exists when the totality of the circumstances indicates a sufficient nexus between the defendant and the contraband." *Wolfe, supra* at 521. Several factors linked defendant to the cocaine found at 732 Bethany. The evidence indicated that defendant had substantial control over the premises for purposes of drug dealing, having four times offered cocaine for sale from that house, and having been found at the house with cocaine in plain view and in proximity of some of defendant's possessions when the police conducted their search. Further, Simpson testified that the cocaine found on top of the dresser, in the room where defendant said that he had spent the night before the search and seizure, was defendant's. This evidence amply supports the jury's finding that the element of possession was met.

### III. EVIDENCE OF DEFENDANT'S PRIOR INCARCERATION

The informant who assisted with the investigation of defendant was instructed not to say anything in front of the jury about defendant's having been incarcerated before, but at trial, when asked during direct examination about receiving a telephone call from

defendant shortly after the latter's arrest, the inform-
ant replied, "He said, guess where I'm at? . . . I'm in
jail. . . . And he says, well, I ain't going back to prison
again." Defense counsel requested a mistrial on the
basis of the informant's statement. The trial court
denied the request, stating, "I'll just instruct. It
won't—will not be followed up or argued in closing
argument." Neither counsel nor any witness made any
further mention before the jury of defendant's incar-
ceration, and in the end the trial court provided no
instruction regarding the matter. Defendant argues on
appeal that this mention of his earlier incarceration
had the effect of denying him a fair trial. We disagree.

This Court reviews a lower court decision regard-
ing a motion for a mistrial for an abuse of discretion.
*People v Haywood*, 209 Mich App 217, 228; 530 NW2d
497 (1995). "A mistrial should be granted only for an
irregularity that is prejudicial to the rights of the
defendant and impairs his ability to get a fair trial."
*Id.* (citations omitted).

It is well settled that evidence of a prior conviction
may be prejudicial to the accused, the danger being
that the jury "will misuse prior conviction evidence
by focusing on the defendant's general bad character
. . . ." *People v Allen*, 429 Mich 558, 569; 420 NW2d
499 (1988). However, not every instance of mention
before a jury of some inappropriate subject matter
warrants a mistrial. Specifically, "an unresponsive,
volunteered answer to a proper question is not
grounds for the granting of a mistrial." *Haywood*,
*supra* at 228.

In this case, it was in answering the prosecutor's
questions concerning the course of the informant's
contacts with defendant that the informant volun-

teered that defendant had made reference to his having been in prison. Defendant does not dispute that this was a proper line of questioning, nor does he suggest that the prosecutor expected the improper response. Because the mention of prior incarceration of which defendant complains was not elicited by the prosecutor but was instead volunteered in response to a proper question, that brief incidental mention did not warrant a mistrial.

Nor do we find error in the trial court's not having provided the jury with a curative instruction. Had defense counsel asked the trial court to follow through with its indication that it would provide such an instruction, the court would have been obliged to do so. However, "failure of the court to instruct on any point of law shall not be ground for setting aside the verdict of the jury unless such instruction is requested by the accused." MCL 768.29; MSA 28.1052. See also *People v Hendricks*, 446 Mich 435, 440-441; 521 NW2d 546 (1994). Further, because a special instruction concerning defendant's having been incarcerated would necessarily have highlighted that fact, defense counsel may well have decided not to bring that double-edged sword into play as a matter of sound strategy.

### IV. REBUTTAL EVIDENCE

During the early stages of trial, the prosecutor equivocated over whether he would call Simpson to testify in his case in chief. The trial court initially ruled that if the prosecutor wished to present Simpson, he would have to do so in his case in chief and not save her for rebuttal. Upon revisiting the issue shortly before the prosecutor rested, however, the

court, citing *People v Figgures*, 451 Mich 390; 547 NW2d 673 (1996), stated that rebuttal testimony is "not automatically precluded because it could have been presented in the case in chief," and that it could be presented if it "goes to what is affirmatively presented." Then, later in the proceedings, after defendant testified on his own behalf, the prosecutor produced Simpson without objection. Defendant argues that the court abused its discretion in admitting Simpson's testimony as rebuttal evidence. We disagree.

A "prosecutor may not divide the evidence on which the people propose to rest their case, saving some for rebuttal." *People v Losey*, 413 Mich 346, 351; 320 NW2d 49 (1982), citing *People v Quick*, 58 Mich 321, 322-323; 25 NW 302 (1885). However,

> [r]ebuttal evidence is admissible to contradict, repel, explain or disprove evidence produced by the other party and tending directly to weaken or impeach the same. . . . [W]hether rebuttal is proper depends on what proofs the defendant introduced and not on merely what the defendant testified about on cross-examination.
>
> . . . [T]he test of whether rebuttal evidence was properly admitted is not whether the evidence could have been offered in the prosecutor's case in chief, but, rather, whether the evidence is properly responsive to evidence introduced or a theory developed by the defendant. As long as evidence is responsive to material presented by the defense, it is properly classified as rebuttal, even if it overlaps evidence admitted in the prosecutor's case in chief. [*Figgures, supra* at 399 (internal quotation marks and citations omitted).]

In *Figgures*, the defendant testified during direct examination that he and the complainant, his then-wife, were reconciling at the time of the alleged

assault. In rebuttal, the prosecutor presented evidence that the complainant had sought a criminal injunction against the defendant during the same period. The Supreme Court held that the trial court did not abuse its discretion in admitting the rebuttal evidence, because "[t]he evidence introduced by the prosecutor responded to evidence and impressions raised by defendant during direct examination." *Id.* at 400.

Defendant does not challenge Simpson's rebuttal testimony on the ground that it was not properly responsive to evidence produced in the defense's case, or that it related to only collateral matters, but instead argues generally that the prosecutor may not produce evidence during rebuttal that could have been presented in the case in chief. However, the Supreme Court established in *Figgures* that the inquiry must go beyond whether the evidence could have been presented in the case in chief, and must consider whether the rebuttal evidence was responsive to evidence put forward by the defense.[3] Because defendant in the instant case testified that he had not lived at the house at 732 Bethany since January 1996, Simpson's testimony that defendant had lived there until May of that year was proper rebuttal. Similarly, because defendant testified that he had no control over any of the contraband found at the house, Simpson's testimony that defendant was in fact the owner of some of the cocaine that was discovered there was again proper rebuttal.

---

[3] We note that defendant's brief on appeal makes no mention of *Figgures*.

V. INSTRUCTION REGARDING THE CREDIBILITY OF AN ADDICT-
INFORMER

Defendant argues that in light of evidence that the informant who testified against him was addicted to drugs at the time of the offense for which defendant was charged, the trial court abused its discretion in refusing a defense request for a jury instruction concerning the credibility of an addict-informer. We disagree.

"[A]n instruction concerning special scrutiny of the testimony of addict-informants should be given upon request, where the testimony of the informant is the only evidence linking the defendant to the offense." *People v Smith*, 82 Mich App 132, 133-134; 266 NW2d 476 (1978), citing *People v Atkins*, 397 Mich 163, 170; 243 NW2d 292 (1976). In this case, the prosecutor elicited from the informant that he had been arrested twice for selling drugs, that he once used illicit drugs four or five times a week, but that he was not using drugs at the time of trial, and defense counsel elicited from the informant on cross-examination that he had had a crack cocaine habit for five years. Although this evidence may raise some suspicions concerning the informant's drug habits over the recent past, it falls short of clearly indicating that he was an addict at the time in question.

Further, the testimony of the informant was not the "*only* evidence linking the defendant to the offense." *Smith, supra* at 134 (emphasis added). Testimony from a police detective as well as from Simpson corroborated the informant's account. Because the indications that the informant was addicted to drugs at the time in question were not conclusive, the jury was well apprised of the informant's criminal background

concerning drugs, and the informant's testimony was corroborated by other evidence, the trial court did not abuse its discretion in declining to provide the jury with a special instruction concerning the credibility of an addict-informer.

## VI. PROBABLE CAUSE FOR THE SEARCH

In the course of a preliminary examination held for defendant and Simpson before their cases were severed, Simpson's attorney moved to suppress the evidence that the police seized from 732 Bethany on the ground that the attendant search warrant rested on a deceptive affidavit and thus was not supported by probable cause. Defendant argues that the district court erred in admitting the evidence.[4] We disagree.

The Fourth Amendment of the United States Constitution, concerning searches and seizures, provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation . . . ." US Const, Am IV. Evidence seized in the course of a violation of a suspect's rights under the Fourth Amendment is subject to suppression at trial. See *People v Chapman*, 425 Mich 245, 252; 387 NW2d 835 (1986), citing *Mapp v Ohio*, 367 US 643; 81 S Ct 1684; 6 L Ed

---

[4] Defendant's lawyer expressly declined to object to admission of that evidence for purposes of the preliminary examination, thus technically failing to preserve this issue for appellate review as concerns defendant. However, because defendant's codefendant raised the objection and the ruling obviously affected both defendants, we here decline to regard the technicality of defendant's lawyer's failing to join in the objection as failing to preserve this issue. Further, "appellate courts will consider claims of constitutional error for the first time on appeal when the alleged error could have been decisive of the outcome." *People v Grant*, 445 Mich 535, 547; 520 NW2d 123 (1994).

2d 1081 (1961); *Wolf v Colorado*, 338 US 25; 69 S Ct 1359; 93 L Ed 1782 (1949).

Where an affidavit in support of a search warrant includes false information provided either intentionally or with a reckless disregard for the truth, evidence obtained pursuant to that warrant must be suppressed if probable cause would not exist without the misinformation; where the affidavit includes sufficient untainted information to establish probable cause apart from the misinformation, the affidavit, and resulting search warrant, remain valid within the scope and to the extent of the untainted information. *People v Melotik*, 221 Mich App 190, 200-202; 561 NW2d 453 (1997), citing *Franks v Delaware*, 438 US 154; 98 S Ct 2674; 57 L Ed 2d 667 (1978), *United States v Shamaeizadeh*, 80 F3d 1131, 1136 (CA 6, 1996), *United States v Smith*, 730 F2d 1052, 1056 (CA 6, 1984), and *People v Stumpf*, 196 Mich App 218, 224; 492 NW2d 795 (1992).

The police detective who provided the affidavit at issue included the assertion that the informant with whom he was working had established credibility by providing information in the past that had at least three times resulted in arrests of drug traffickers and seizures of controlled substances. Uncontroverted testimony during the preliminary examination and during trial indicated clearly that in fact the informant before the instant case had not provided information leading to any arrests or seizures concerning controlled substances. We agree with defendant that the police detective's exaggeration concerning the informant's history of assisting with drug investigations was misinformation that could not support the search warrant.

However, the untainted assertions within the affidavit include a summary of observations of drug trafficking activity made by the police pursuant to their surveillance of the premises in question, and the informant's statements were corroborated by reliable police investigations. If the single sentence containing the misinformation of which defendant complains is redacted from the affidavit, what remains well supports the resulting search warrant. For these reasons, the evidence seized pursuant to that warrant was properly admitted at trial.

## VII. CUMULATIVE ERROR

Finally, defendant argues that the trial court improperly allowed evidence of defendant's history as a drug dealer, plus evidence that defendant's operations matched a drug-trafficking profile, that he failed to pay child support, and that he drove a car without a license. Defendant further argues that the court allowed the prosecutor to improperly bolster the credibility of Simpson by establishing that she had no prior convictions. Defendant maintains that these alleged errors, along with the inadvertent mention of his having been in prison before, had the cumulative effect of denying him a fair trial. We disagree.

### A. EVIDENTIARY ISSUES

Defendant argues that irrelevant and highly prejudicial evidence that tended to portray him as a bad person was admitted on four occasions, in addition to the incident where the informant volunteered that defendant had been in prison before (discussed in part III above). The first was when the informant and

the police detective each testified that the detective had known before working with the informant that defendant was the informant's supplier. Defense counsel did not object to this testimony as improper bad acts evidence, thus waiving this issue for appellate review. To preserve an evidentiary issue for appeal, the party opposing the admission of evidence must object at trial on the same ground that the party asserts on appeal. MRE 103(a)(1). However, this Court may consider unpreserved issues where failure to do so would result in manifest injustice. *People v Metzler*, 193 Mich App 541, 548; 484 NW2d 695 (1992). There is no manifest injustice in this instance. This testimony was introduced not as character evidence, but as proper rebuttal to defendant's theory that the informant had implicated defendant as a drug dealer out of a personal motive for revenge.

Concerning drug profile evidence, defendant argues that the trial court improperly allowed the police detective to testify that he observed people entering and leaving the house at 732 Bethany in a manner that was indicative of drug trafficking. Again, defense counsel did not object to this testimony, thus waiving appellate review absent manifest injustice. We find no manifest injustice here. As this Court has stated, citing various federal cases, "the use of drug profiles as substantive evidence of a defendant's guilt has been widely condemned." *People v Hubbard*, 209 Mich App 234, 239-240; 530 NW2d 130 (1995). However, the detective was testifying in this instance as an expert concerning his impression that drug trafficking was taking place at 732 Bethany. The status of defendant as a drug dealer, and that of 732 Bethany as a drug house, were questions before the jury. Expert testi-

mony concerning indicia of drug trafficking relating to both, which was not within the knowledge of a layperson, aided the jury in resolving those questions. See *People v Ray*, 191 Mich App 706, 708; 479 NW2d 1 (1991). Thus the testimony was not improper drug profile evidence, but rather proper expert testimony concerning material issues.

In regard to defendant's failure to pay child support, the prosecutor asked defendant during cross-examination if he had been paying child support for his four children, and defendant answered that he had not, except for his son with Simpson. Defense counsel raised an objection, which the court sustained. There is no indication that defense counsel requested any curative instruction. Although in extreme cases a prosecutor's probing into improper subject matter may be so prejudicial that the error cannot be corrected,[5] defendant develops no argument, and cites no authority, to suggest that this foray into allegedly irrelevant subject matter was so prejudicial as to support a prayer for reversal. Thus, this issue is waived. A party may not merely state a position and then leave it to this Court to discover and rationalize the basis for the claim. *In re Hamlet (After Remand)*, 225 Mich App 505, 521; 571 NW2d 750 (1997); *In re Toler*, 193 Mich App 474, 477; 484 NW2d 672 (1992). In any event, we are satisfied that the question and answer at issue constituted at worst a minor misstep, which the trial court well remedied by sustaining the defense objection.

---

[5] See, generally, *People v Messenger*, 221 Mich App 171, 179, n 3; 561 NW2d 463 (1997).

Finally, there was no error attendant to the introduction of testimony that defendant drove without a license. Defendant himself volunteered during direct examination both that he drove regularly and that his license was suspended. Because error requiring reversal cannot be error to which the aggrieved party contributed by plan or negligence, defendant has waived appellate review of this issue. *Phinney v Perlmutter*, 222 Mich App 513, 537; 564 NW2d 532 (1997).

Because defendant has failed to identify any seriously prejudicial errors concerning the introduction of any evidence at trial, his argument that the cumulative effect of any such errors denied him a fair trial must fail.

### B. BOLSTERING THE WITNESS

At trial, the prosecutor elicited from Simpson that she had no convictions before her participation in the instant case. There was no defense objection in response. Evidence of the lack of a criminal record is not admissible to prove the honesty or bolster the credibility of a witness. *People v Phillips*, 170 Mich App 675, 680-681; 428 NW2d 739 (1988). The record suggests no purpose for this inquiry into Simpson's lack of convictions other than to bolster her credibility. However, in the absence of an objection or a request for a curative instruction below, appellate review of the matter is limited to determining whether the misconduct was sufficiently egregious that no curative instruction would have counteracted the prejudice to defendant, or whether manifest injustice would result from failure to review the alleged misconduct. *People v Launsburry*, 217 Mich App 358, 361; 551 NW2d 460 (1996). In this instance, we are

persuaded both that a curative instruction would have counteracted any slight prejudice defendant may have suffered and that no manifest injustice will result from our declining to consider this issue further.

In sum, the few minor mishaps from which defendant alleged cumulative error fall far short of denying him a fair trial.

Affirmed.