*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
February 14, 2019

v

ZDRAVKO DELJEVIC,

Defendant-Appellant.

No. 339315
St. Clair Circuit Court
LC No. 16-003043-FH

Before: MURRAY, C.J., and STEPHENS and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of home invasion, first-degree, MCL 750.110a(2), and conspiracy to commit home invasion, first-degree, MCL 750.110a(2) and MCL 750.157a.[1] Defendant was sentenced as a fourth habitual offender, MCL 769.12, to concurrent terms of 10 to 25 years for home invasion and the same for conspiracy. We affirm in part but remand for a *Walker* hearing[2] at which defendant may testify regarding his contention that his confession was involuntary. We instruct the trial court that, if it concludes after the hearing that the evidence was properly admitted, it need take no further action; but if it concludes that the confession should have been suppressed, defendant shall be granted a new trial.

## I. BACKGROUND

On January 4, 2016, defendant and two accomplices, Alante Deatrick and Diana Faieta, executed the home invasion they had previously planned at the home of John and Marcilynn Misaros, and stole at least three guns and over $25,000 worth of jewelry. The police did not attempt to recover any fingerprint or DNA evidence at the Misaros home, and were unable to locate the missing property at various pawn shops. Two weeks later, Detective Steve Surman

---

[1] The jury found defendant not guilty of felony-firearm, the third charge against him.

[2] *People v Walker (On Rehearing)*, 374 Mich 331, 338; 132 NW2d 87 (1965).

received a call from the Michigan State Police after they interviewed all three coconspirators regarding another home invasion. Upon receiving their names, Detective Surman investigated all three in connection with the Misaros break-in. All three were eventually arrested and charged with first-degree home invasion, conspiracy to commit first-degree home invasion and felony-firearm. Deatrick and Faieta reached a plea deal pursuant to which they each agreed to testify against defendant in exchange for the dismissal of their felony-firearm charges.

At defendant's trial, Deatrick and Faieta each testified that they had accepted a plea deal, and that defendant planned and committed the home invasion with them. Detective Surman testified that, upon receiving the names of the coconspirators from the Michigan State Police, he obtained defendant's information and contacted defendant's parole officer, who told him that defendant was then in a drug rehabilitation facility. When Detective Surman later interviewed defendant, defendant denied involvement in the crime and said he had been in rehab on the date of the robbery. When the prosecutor asked if he had investigated further, Detective Surman responded that he already knew that defendant was not speaking to his parole officer. Based on this second mention of the fact that defendant had a parole officer, defense counsel moved for a mistrial, arguing that a jury instruction would only further highlight the information. The trial court denied the motion and instead instructed the witness not to refer to defendant's criminal background again.

Detective Surman also testified that defendant admitted during the initial interview that he knew Deatrick and Faieta, that they lived across the street from him, that they all used heroin, and that he had seen weapons like those stolen from the Misaros house in their house across the street. Based on that information, Surman arranged for defendant to be given a polygraph test with pretest and posttest interviews by Michigan State Police Detective Sergeant Derek Jordan in Northville. Surman and another detective drove to Detroit to get defendant and drove him to Northville for the polygraph test and interviews.

Sergeant Jordan testified that his job was to conduct interviews for the biometrics identification section of the Michigan State Police, and that he interviewed defendant in July 2016. He testified that he read defendant his rights before beginning the interview and testing process, and provided defendant with a rights form, which defendant initialed and signed, indicating that he knew each of his rights and his agreement to the process was voluntary. Sergeant Jordan testified that, initially, defendant denied any involvement in the home invasion, but he later stated that he had given his life to God and wanted to be honest. He then admitted that he was present during the home invasion with another individual, and they stole a television, jewelry and guns. Sergeant Jordan also admitted that the interviews and test had not been recorded, as required by MCL 763.8.

At the conclusion of plaintiff's case, defense counsel moved for a directed verdict on the conspiracy charge, which the trial court denied. Defendant did not testify or offer any evidence. The jury began deliberations mid-afternoon of the second day of the trial, but informed the judge toward the end of the day that they were unable to reach a verdict, and their vote was then nine to three. The judge dismissed the jury and instructed them to return at 9:00 a.m. the next morning to resume deliberations. After deliberating for about an hour the next morning, they sent a note to the judge, asking in relevant part whether Deatrick and Faieta had named defendant as a coconspirator and participant before or after they were offered plea deals. After being informed

that both had named defendant during their initial interview with the Michigan State Police two weeks after the home invasion, the jury resumed deliberations and reached a unanimous verdict about half an hour thereafter. The jury found defendant guilty of conspiracy and home invasion, but not guilty of felony-firearm. On June 26, 2017, the trial court sentenced defendant to 10 to 25 years of imprisonment for each conviction, to run concurrently to each other, but consecutively to two other concurrent sentences from a different conviction. This appeal followed.

## II. MOTION FOR MISTRIAL

Defendant first argues that he is entitled to a new trial because the prosecutor and Detective Surman intentionally attempted to influence the jury with the detective's testimony that defendant had a parole officer, and that this denied him his right to a fair trial. We disagree.

Defendant preserved this issue by requesting a mistrial on the basis of Detective Surman's testimony. See *People v Nash*, 244 Mich App 93, 96; 625 NW2d 87 (2000). We review the issue of whether a mistrial should have been granted for an abuse of discretion. *Id*. "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008). "A mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial." *People v Haywood*, 209 Mich App 217, 228; 530 NW2d 497 (1995) (internal citations omitted).

"It is well settled that evidence of a prior conviction may be prejudicial to the accused, the danger being that the jury 'will misuse prior conviction evidence by focusing on the defendant's general bad character[.]' " *People v Griffin*, 235 Mich App 27, 36; 597 NW2d 176 (1999) overruled on other grounds by *People v Thompson*, 477 Mich 146; 730 NW2d 708 (2007), quoting *People v Allen*, 429 Mich 558, 569; 420 NW2d 499 (1988). See also *People v Holly*, 129 Mich App 405, 416; 341 NW2d 823 (1983) ("Inadmissible evidence tying a defendant to other crimes is highly prejudicial."). Evidence that was volunteered and was unresponsive to a proper question however, is generally not cause for granting a motion for mistrial. *Holly*, 129 Mich App at 415. In this instance, the testimony came from a detective. We examine unresponsive remarks from police officers with greater scrutiny. *Id*. Police officers have a "special obligation not to venture into such forbidden areas" and are held to a higher standard than civilian witnesses. *Id*. at 415-416.

In the present case, Detective Surman made two references to the defendant having a parole officer. In neither circumstance was the prosecutor attempting to elicit the improper testimony. The first reference came when the prosecutor asked whether, and how, the detective investigated defendant. The detective made the second reference after being asked whether he had further investigated defendant's alibi that he was in rehab on the day of the crime. Defendant moved for a mistrial after the second statement. The court denied defendant's motion, but cautioned the detective to not make any reference to defendant's past criminal history. The prosecutor agrees that mention of the defendant's parole status was improper and that Detective Surman, having worked 29 years in law enforcement, should have known better. After careful scrutiny of the entire exchange between the prosecutor and Detective Surman, we are left with little doubt that the detective inserted the fact that defendant had a parole officer intentionally, on

both occasions. We disagree that the prosecutor's second inquiry, as to whether the detective investigated the defendant's assertion that on the day of the robbery he was already in re-hab, invited the reference to parole. Instead, the prosecutor likely wanted to point out to the jury that the defendant's claim was false. As an experienced police officer, the detective was reasonably expected to know that his reference to previous convictions was improper. *Id.* Additionally, his answers to most of the other questions were directly responsive—they answered the question asked and provided very little additional information. In contrast, the two answers at issue did not answer the question directly and provided unsought and unnecessary information that this Court has characterized as highly prejudicial. This is troubling. The prosecutor argues, however, that even if the remarks were improper, defendant failed to make the requisite showing of prejudice.

"The test to be used in determining whether a mistrial should be declared is not whether there were some irregularities, but whether the defendant had a fair and impartial trial." *People v Lumsden*, 168 Mich App 286, 298; 423 NW2d 645 (1988). Detective Surman's testimony, while irregular in nature, was brief and incidental, and volunteered in response to proper questioning. The improper and non-responsive answers also fortunately did not describe the nature of the prior conviction. We cannot conclude that the error of their admission was egregious as to deny defendant a fair trial. The jury also heard the testimony of the accomplices, the circumstances of their plea deals, and the defendant's confession to Detective Jordan. It is noteworthy that the jurors in this case based their decision, at least in part, on the important and legitimate factor of the codefendants' credibility. This was demonstrated by their question, shortly before reaching their verdict, about when the coconspirators implicated defendant. The answer given to them was that each codefendant had implicated defendant during their initial contact with the Michigan State Police. In the final analysis, the trial court's decision to deny defendant's motion for a mistrial was not outside the range of principled outcomes.

### III. *WALKER* HEARING

Defendant next argues that the trial court erred by denying his motion for a *Walker* hearing. We agree, and remand this case for a *Walker* hearing so that defendant can exercise his right to testify that his confession was not knowing or voluntary.

Defendant preserved this issue by requesting a *Walker* hearing along with his pretrial motion to suppress his confession. We review preserved, constitutional issues de novo. *People v Nutt*, 469 Mich 565, 573; 677 NW2d 1 (2004).

" 'Statements of an accused made during custodial interrogation are inadmissible unless the accused voluntarily, knowingly, and intelligently waives his Fifth Amendment rights.' " *People v Abraham*, 234 Mich App 640, 644; 599 NW2d 736 (1999), quoting *People v Howard*, 226 Mich App 528, 538; 575 NW2d 16 (1997). "A confession or waiver of constitutional rights must be made without intimidation, coercion, or deception" but rather "must be the product of an essentially free and unconstrained choice by its maker." *People v Akins*, 259 Mich App 545, 564; 675 NW2d 863 (2003).

In *People v Walker (On Rehearing)*, 374 Mich 331, 338; 132 NW2d 87 (1965), our Supreme Court held that "when a defendant contends that statements that had been made were

involuntary, the trial court *must* conduct a hearing outside the presence of the jury to determine the issue of voluntariness, at which the defendant may take the stand without waiving the right not to testify at trial." *People v Manning*, 243 Mich App 615, 624-625; 624 NW2d 746 (2000) (emphasis added). This Court has characterized this hearing as a "right" deriving from the Fifth Amendment's prohibition against self-incrimination. *Id*. at 625. A defendant may demand this hearing once he or she challenges the voluntary nature of his or her confession. *People v Ray*, 431 Mich 260, 269; 430 NW2d 626 (1988). "The state has the burden of proving by a preponderance of the evidence that there was a valid waiver of the suspect's rights." *Abraham*, 234 Mich App at 645.

In this case, defendant timely demanded the *Walker* hearing in his pretrial suppression motion. The trial court denied the motion after hearing oral argument. From the record, it appears that the trial court concluded that the hearing was unnecessary because nothing defendant could say would change the court's opinion that his confession was knowing and voluntary in light of the prosecution's evidence. This was error because defendant was entitled to testify on this matter at a hearing outside the jury's presence *before* the court made a determination regarding the voluntariness of his confession. *Manning*, 243 Mich App at 625.

Additionally, we note that the trial court appears to have considered only defendant's previous experience with the criminal justice system before concluding that his release of rights was knowing and voluntary. Our Supreme Court has provided guidance by directing trial courts to consider several factors:

> In determining whether a statement is voluntary, the trial court should consider, among other things, the following factors: the age of the accused; his lack of education or his intelligence level; the extent of his previous experience with the police; the repeated and prolonged nature of the questioning; the length of the detention of the accused before he gave the statement in question; the lack of any advice to the accused of his constitutional rights; whether there was an unnecessary delay in bringing him before a magistrate before he gave the confession; whether the accused was injured, intoxicated or drugged, or in ill health when he gave the statement; whether the accused was deprived of food, sleep, or medical attention; whether the accused was physically abused; and whether the suspect was threatened with abuse. [*People v Cipriano*, 431 Mich 315, 334; 429 NW2d 781 (1988).]

In direct contrast, the trial court in the present case appears to have considered only one factor—the extent of defendant's previous experience with the criminal justice system. Defendant made several arguments, both in his motion and at oral argument, which were not considered. Denying defendant's request for a *Walker* hearing was error.

The proper remedy for a trial court's error in this regard, however, is not to grant a new trial. In *Walker (On Rehearing)*, 374 Mich 331, the Michigan Supreme Court merely remanded the matter to the trial court with instructions to hold the *Walker* hearing, allowing defendant to testify without waiving his right to remain silent during a retrial, if any. *Id*. at 338. The Court further instructed that if, after the hearing, the trial court were to determine that the confession was involuntary, the defendant was to be granted a new trial. If, on the other hand, the court

were to determine after the *Walker* hearing that the waiver of rights was voluntary, then the defendant already would "have had a trial affording him constitutional due process." *Id*.

We affirm the trial court's denial of defendant's motion for mistrial and remand for a *Walker* hearing consistent with this opinion. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Cynthia Diane Stephens
/s/ Michael J. Riordan