*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TORYE SHEVAR GILBERT,

        Defendant-Appellant.

UNPUBLISHED
March 17, 2020

No. 344643
Saginaw Circuit Court
LC No. 17-044170-FC

Before: RONAYNE KRAUSE, P.J., and K. F. KELLY and TUKEL, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of two counts of assault with intent to commit murder (AWIM), MCL 750.83; possession of a firearm by a felon (felon-in-possession), MCL 750.224f; carrying a weapon with unlawful intent, MCL 750.226; resisting or obstructing a police officer, MCL 750.81d(1); third-degree fleeing and eluding, MCL 257.602a(3)(a); and four counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b(1). He was sentenced to 35 to 50 years' imprisonment for each AWIM conviction, 15 to 30 years' imprisonment for the felon-in-possession and carrying a weapon with unlawful intent convictions, 10 to 15 years' imprisonment for the resisting or obstructing a police officer conviction, 10 to 20 years' imprisonment for the fleeing and eluding conviction, and two years' imprisonment for each felony-firearm conviction. Defendant appeals as of right, and we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Defendant's convictions arise from the dissolution of his relationship with his ex-girlfriend, the primary victim.[1] After the relationship ended, defendant appeared at the victim's workplace, called her repeatedly while she was at work, and appeared at her home at night. Although defendant made threats during the course of their relationship, the victim reported the recent threats to her manager, filed a

---

[1] The victims of the assault with intent to commit murder convictions were the ex-girlfriend and her daughter. To avoid confusion, we will refer to the ex-girlfriend as "victim."

police report, and sought a personal protection order. On February 9, 2017, a security officer met the victim in the lobby to walk her to a waiting car driven by her daughter. The victim paused when she saw the defendant in his vehicle stopped at a traffic light, but proceeded to her daughter's car without incident after defendant drove away. While their car waited in a line of traffic to exit the parking lot, defendant drove his vehicle within feet of the stopped car, walked to the passenger side where the victim was seated, pointed the gun at her, and fired a shotgun into the car, shattering the glass all over the victim. He fired a second shot into the car. The daughter drove over curbs to flee and drove onto the freeway with defendant in pursuit in his own vehicle. The women were able to evade defendant when he drove into a ditch, and they flagged down a police officer. Defendant became involved in a police chase and threw his shotgun from his car during the pursuit. He also refused commands to surrender and fled on foot, but was captured. Defendant gave a statement to the police and asserted that he only intended to scare the victim.

During defendant's first trial, the prosecution played a video recording of the custodial statements that defendant made to the police following his arrest. During the playing of the recording, the trial court instructed the prosecution to stop the recording, and the jury was removed from the courtroom. The trial judge then expressed his concern that the jury had heard a statement about defendant "being locked up for 15 years." Defense counsel moved for a mistrial. The trial court agreed that the statement was concerning and that any conviction by the jury would be appealable and likely reversible. Therefore, the trial court declared a mistrial.

During the second trial, the jury was informed by stipulation that defendant had a conviction of a specified felony that affected his right to the possession or use of a firearm. The jury also heard the testimony of the victim and her daughter, a security guard who had witnessed the shooting, and several of the responding and investigating officers. On the second day of trial, the prosecution played the recording of defendant's statements for the jury and the trial court once again paused the recording. A bench conference was held, and shortly thereafter, the jury was instructed:

> Ladies and gentlemen, you heard a statement that was made by [defendant] that I did my time. Any reference to doing time you are not to consider in making your decision. Your decision is to be based solely upon the evidence in this case and the testimony from the witness stand. You are to draw no inferences from that statement in making your decision.

The prosecution rested its case, and the jury was excused.

The trial court then inquired if defendant wished to testify. After advising defendant of his rights and receiving a waiver, the trial court inquired if there was any objection to the curative instruction. Both defense counsel and the prosecutor expressly stated that there was no objection, and the trial court explained why it chose to give a curative instruction as the remedy:

> And the Court does not feel that it rises to the level of this Court having to declare a mistrial, given the fact that the jury will already be aware that he's a convicted felon and that they could deduce from that that he previously did time. There was no number of years that was attached to that statement so the Court does not feel that it's necessary to declare a mistrial at this point in time. I believe the curative instruction is sufficient.

During the prosecutor's closing arguments, she stated:

> There is no doubt in my mind that that the People have met their burden beyond a reasonable doubt. The Judge is going to give you instructions on the law. And this is just a summary. If anything is different than what I'm going to go over, please follow the Judge's instructions. We have ten counts to prove.

After presenting the elements of each charge and explaining how the evidence and testimony supported a conclusion that the prosecution's burden had met, the prosecutor stated once again:

> I say to you today, that there is no doubt in my mind that we have met our burden. We have proven beyond a reasonable doubt that the defendant did commit each and every court that he's been charged with, one through ten. And we ask you, the People ask you, to do what's right, and to find the defendant guilty as charged. Thank you.

During rebuttal argument, the prosecutor again expressed her belief that the charges had been proven beyond a reasonable doubt and that the charge of assault with intent to commit murder was the appropriate charge, contrary to defense counsel's argument that a lesser offense occurred:

> The People believe wholeheartedly that this is not a great bodily harm case. This is not an only assault case. This is an assault with intent to murder. He intended to murder [the victim]. And through transferred intent, he put [her daughter] in harm's way as well. We talked about transferred intent. The defense is saying we don't have a chain to connect, but we've connected every dot. We've went through every element. There is no doubt in my mind that we have met our burden. And I ask you, when you go back and deliberate, that you find the defendant guilty on all ten charges.

Following deliberations, the jury convicted defendant as charged.

## II. MISTRIAL

Defendant first alleges that the trial court erred by failing to declare a mistrial during the second trial when the prosecution played the portion of the recording in which the defendant admitted that he had "done time" because of the prejudicial effect of the statement. We disagree.

First, the record does not reflect that defendant moved for a mistrial after the recording was played. Accordingly, on this unpreserved issue, our review is limited to plain error affecting defendant's substantial rights. *People v Kahley*, 277 Mich App 182, 183; 744 NW2d 194 (2007). To avoid forfeiture under the plain error rule, a defendant must show that (1) an error occurred, (2) the error was clear or obvious, and (3) "the plain error affected [the defendant's] substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Plain error "generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. Even if a defendant establishes a plain error that affected his substantial rights, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. (quotation marks and citation omitted; second alteration in original).

"A mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant, and impairs his ability to get a fair trial." *People v Haywood*, 209 Mich App 217, 228; 530 NW2d 497 (1995) (citations omitted). The grant of a mistrial is warranted "only where the error complained of is so egregious that the prejudicial effect can be removed in no other way." *People v Gonzales*, 193 Mich App 263, 266; 483 NW2d 458 (1992).

"It is well settled that evidence of a prior conviction may be prejudicial to the accused, the danger being that the jury will misuse prior conviction evidence by focusing on the defendant's general bad character." *People v Griffin*, 235 Mich App 27, 36; 597 NW2d 176 (1999) (quotation marks and citations omitted), overruled on other grounds by *People v Thompson*, 477 Mich 146; 730 NW2d 708 (2007). When a defendant is charged with felon-in-possession, the charge need not be severed from the remaining charges because the fact of defendant's prior conviction could be introduced by stipulation and an instruction given to consider the prior conviction as it relates only to the felon-in-possession prosecution. See *People v Mayfield*, 221 Mich App 656, 658-660; 562 NW2d 272 (1997). These safeguards are adequate to ensure that a defendant suffers no unfair prejudice. *Id*.

As the trial court noted, the parties stipulated and informed the jury that defendant had a prior felony conviction. Defendant's past criminal history was, therefore, at issue and known to the jury. Under the circumstances, the fact that defendant made an isolated statement that acknowledged that he previously did "time" did not constitute a prejudicial irregularity or error so egregious that a mistrial was warranted. *Haywood*, 209 Mich App at 228; *Gonzales*, 193 Mich App at 266. Moreover, the trial court instructed the jury to disregard defendant's statement in reaching a decision. "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003).

Nonetheless, defendant submits that the trial court held that the reference to imprisonment in the first trial warranted a mistrial, and therefore, the only proper remedy for the recurrence of the error in the second trial is also a mistrial. We disagree. In the first trial, defendant expressly referenced "15 years," a lengthy term of imprisonment that could have caused the jury to question the nature of the conviction that necessitated such a sentence. However, defendant's reference to "doing time" in the second trial did not reference a defined time period. The statement heard by the jury did not describe the nature of the prior conviction. In light of the stipulation that defendant was previously convicted of a felony, the reference to "doing time" merely comports with the general consequences for a felony conviction. Furthermore, in the present case, defendant did not dispute that he fired a shotgun at the victim while she was a passenger seated next to the driver, her daughter. Accordingly, we cannot conclude that the statement was so egregious as to deny defendant a fair trial or that defendant was prejudiced. Defendant did not establish plain error affecting his substantial rights.

### III. PROSECUTORIAL MISCONDUCT[2]

---

[2] Although defendant characterizes the prosecutor's statements as misconduct, this Court recently explained that a fairer label for most claims of prosecutorial misconduct would be "prosecutorial error," because only the most extreme and rare cases rise to the level of "prosecutorial misconduct." *People v*

Defendant also submits that the prosecutor's repeated statements during closing arguments and rebuttal regarding her "belief" and that there was "no doubt in [her] mind" that the prosecution had met its burden constituted prosecutorial misconduct. We disagree.

We note that defendant did not object to the prosecutor's statements during the lower court proceedings. Unpreserved claims of prosecutorial misconduct are reviewed for plain error. *People v Unger*, 278 Mich App 210, 234-235; 749 NW2d 272 (2008). Reversal is warranted only when plain error resulted in the conviction of an innocent person, or seriously affected the fairness, integrity, or public reputation of the proceedings. *Id.* at 235. Reversal is not appropriate where a curative instruction could have alleviated the prejudicial effect. *Id.*

"[T]he test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). A defendant's opportunity for a fair trial can be jeopardized when the prosecutor interjects issues broader than the guilt or innocence of the accused. *Id.* at 63-64. Prosecutorial misconduct issues are decided on a case-by-case basis, and the reviewing court must examine the record and evaluate a prosecutor's remarks in context. *Id.* at 64. "The propriety of a prosecutor's remarks depends on all the facts of the case." *Id.* (quotation marks and citation omitted). Further, prosecutorial comments must be read as a whole and evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial. *Id.*

Typically, prosecutors are afforded great latitude regarding their arguments at trial and "are generally free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *Unger*, 278 Mich App at 236. However, prosecutors must refrain from either expressing their personal opinion of a defendant's guilt or making denigrating or prejudicial remarks against a defendant. *People v Bahoda*, 448 Mich 261, 282-283; 531 NW2d 659 (1995). A prosecutor may not vouch for the character of a witness or place the prestige of her office behind them. *People v Bairefoot*, 117 Mich App 225, 229; 323 NW2d 302 (1982).

> The argument that the prosecutor improperly expressed an opinion on the question of guilt is frequently urged on appeal. We emphasize that this question does not turn on whether or not any magic words are used. If the prosecutor says "I believe" rather than "the evidence shows", this in and of itself does not constitute reversible error. The prosecutor is free to argue that the evidence shows that the defendant is guilty. The question is not whether the jury would conclude that the prosecutor believes that the defendant is guilty, a conclusion they would reach in any event, but rather, whether the prosecutor has attempted to vouch for the defendant's guilt. The prosecutor may not attempt to place the prestige of his office, or that of the police, behind a contention that the defendant is guilty, but he may argue that the evidence shows that the defendant is guilty. [*People v Cowell*, 44 Mich App 623, 628; 205 NW2d 600 (1973).]

A review of the prosecutor's closing argument reveals that she addressed the elements of all ten

---

*Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015). However, we will use the phrase "prosecutorial misconduct" because it has become a term of art in criminal appeals. *Id.*

offenses and applied the evidence presented at trial to those elements. At the conclusion of the analysis of each charge, the prosecutor either opined that the elements were met or her belief that the elements were met. Her belief was not relevant, but rather, whether the evidence established the elements was the crucial inquiry. *Cowell*, 44 Mich App at 628. However, her use of an inartful term did not alter the fact that the jury was responsible for determining defendant's guilt, *id.*, a statement that the prosecutor also made to the jury. Accordingly, the prosecutor's arguments, albeit inartful, were properly premised on the evidence and represented the prosecutor's reasonable inferences[3] drawn from the evidence. Moreover, the prosecutor did not denigrate defendant or argue a personal belief of defendant's guilt; rather, the prosecutor focused on whether the burden of proof had been met. Further, even if the statements were improper, they were not so inflammatory or pervasive that a curative instruction would have been futile. *Unger*, 278 Mich App at 234.

In that regard, the record reflects that the trial court instructed the jury to decide the case on the basis of only properly admitted evidence and told them that the attorney's arguments were not evidence. This Court has explained that "[c]urative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements." *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009). As previously noted, "jurors are presumed to follow their instructions." *Unger*, 278 Mich App at 235.

Additionally, there is no indication that the jury was distracted from deciding the issues of the case. The jury heard two days of testimony regarding the shooting and had the opportunity to hear testimony from the victims, witnesses, and officers involved. Accordingly, it is reasonable to conclude that the jury was well-versed in the facts of the case and able to make a determination of defendant's guilt on the basis of the evidence presented rather than attorney argument. In whole, on this unpreserved issue, defendant failed to establish that he was prejudiced by any alleged errors or that the alleged errors impacted the outcome of the jury's verdict or denied him of a fair trial. He did not challenge the shooting, his flight, or his contact with the officers, but merely asserted that his intent was only to scare. This claim of error does not provide him with appellate relief.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant contends that his trial counsel was ineffective for failing to seek a mistrial in the second trial and for failing to object to the prosecutorial misconduct. We disagree.

Because defendant failed to move for a new trial or an evidentiary hearing pursuant to *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973), our review is limited to mistakes apparent from the record, *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). To succeed in this claim, defendant must demonstrate that counsel's performance fell below an objective standard of

---

[3] Defendant submitted that the prosecutor presented inadmissible opinion testimony by arguing that defendant had the intent to kill. However, the prosecutor questioned defendant's theory of the case before the jury by noting that if defendant did not have the intent to kill, but only the intent to scare the victim and her daughter, he would merely brandish the weapon or fire it into the air, a legitimate inquiry in light of the evidence admitted at trial.

-6-

reasonableness and there is a reasonable probability that, but for counsel's errors, the results would have been different. *People v Scott*, 275 Mich App 521, 526; 739 NW2d 702 (2007).

In this case, given defendant's failure to request an evidentiary hearing, the question of whether trial counsel requested or discussed the possibility of a mistrial with the trial court during the bench conference is unknown.[4] Nonetheless, on this record, it is clear that the trial court made such a consideration and determined that a mistrial was unnecessary given that the jury was aware of defendant's prior felony conviction in light of the stipulation. Further, the trial court noted that the jury could have reasonably ascertained that the felony conviction resulted in a period of incarceration, and no specific time frame was discussed. Trial counsel may have reasonably believed that the curative instruction was sufficient, given these circumstances.

Further, given the trial court's statements, it is apparent that even if trial counsel had moved for a mistrial, such a motion would have been futile and ultimately denied. This Court has previously indicated that "[f]ailing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Therefore, counsel's performance did not prejudice defendant and did not constitute ineffective assistance of counsel.

Similarly, defendant cannot establish that defense counsel's failure to object to the prosecutor's statements constituted ineffective assistance of counsel. Counsel was not required to raise a meritless objection, *Ericksen*, 288 Mich App at 201, and defendant cannot establish that, but for counsel's alleged error, he would not have been convicted, *Scott*, 275 Mich App at 526.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Jonathan Tukel

---

[4] It is imperative that the trial court and the parties place a summation of bench conferences on the record to preserve their rights and in order to facilitate appropriate appellate review.