*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
May 9, 2024

Plaintiff-Appellee,

v

No. 359640
Wayne Circuit Court
LC No. 20-004217-01-FC

BRANDON LAWRENCE TATE,

Defendant-Appellant.

Before: CAVANAGH, P.J., and K. F. KELLY and RICK, JJ.

PER CURIAM.

Defendant appeals by right his jury trial convictions of first-degree premeditated murder, felon in possession of a firearm ("felon-in-possession"), and two counts of possession of a firearm during the commission a felony ("felony-firearm"), second offense. The trial court sentenced defendant as a fourth-offense habitual offender to life imprisonment for the first-degree premeditated murder conviction and 76 months to 20 years' imprisonment for the felon-in-possession conviction, to be served concurrently, but consecutive to concurrent five-year terms of imprisonment for the felony-firearm convictions. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case arises from the July 30, 2020 death of Myson Bost, Sr., who was shot multiple times in the head while sitting in his car at a gas station near Evergreen and Six Mile Road in Detroit, Michigan. At trial, the prosecutor presented circumstantial evidence linking defendant to the shooting.

Principally, a witness testified that the only person near the victim's car just after the shooting was the same person who was previously involved in a fight with the victim at the same gas station. Witness testimony identified defendant as that individual. In addition, surveillance video from hours before the shooting, compiled from several sources, showed a red car similar to a car driven by defendant park near a house formerly occupied by him, which was down the street from the crime scene. According to the videos, just before the shooting, a person emerged from the area near the home and walked toward the gas station. After gunshots can be seen and heard

on the video, a person returned from the direction of the gas station, approached the area near the home, and drove away in the red car.

A jury convicted defendant of first-degree premeditated murder, MCL 750.316(1)(a), felon-in-possession, MCL 750.224f, and two counts of felony-firearm, second offense, MCL 750.227b. After sentencing, defendant moved for a new trial on several grounds, which he now raises on appeal. The trial court granted a *Ginther*[1] hearing, but ultimately denied defendant's motion for a new trial on all grounds. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

First, defendant argues that there was insufficient evidence of his identity as the shooter to support his convictions. We disagree.

### A. STANDARDS OF REVIEW

This Court reviews de novo a claim of insufficient evidence. *People v Lowrey*, 342 Mich App 99, 122; 993 NW2d 62 (2022). The Court "must view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *Id.* (quotation marks and citation omitted). "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict. Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v Lymon*, 342 Mich App 46, 56; 993 NW2d 24 (2022) (quotation marks and citations omitted).

### B. ANALYSIS

"For a jury to find a defendant guilty of a charged crime, the prosecution must demonstrate that the defendant is guilty of every element of a crime beyond a reasonable doubt." *People v Posey*, 512 Mich 317, 323; 1 NW3d 101 (2023). Defendant disputes the "identity" element of each crime for which he was convicted. See *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008) (stating that identity is an essential element in every criminal prosecution).

When viewed in a light most favorable to the prosecution, there was sufficient circumstantial evidence to establish defendant's identity as the perpetrator of the offenses. A witness, Derrin McNeely, testified that he was outside of the gas station when the victim was shot and saw someone shoot the victim from the driver's side of the vehicle. Although the witness did not see the shooter, he recognized the only person near the victim's vehicle after the shooting as the same person who had previously gotten into a fight with the victim at the same gas station. Two witnesses testified that defendant and the victim had previously gotten into a fight at the gas station. In addition, witnesses heard defendant make threats about the victim after the fight.

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

The video evidence also provided additional circumstantial evidence that defendant was the perpetrator. The videos depicted a person park a red car near a home down the street from the gas station, walk toward the gas station before the shooting, and return to the vehicle after the shooting. Given the timing, the jury could reasonably infer that it was the same person in each of these portions of the video. Defendant concedes that the vehicle in the video is red, and multiple witnesses testified that defendant drove a red Monte Carlo. In addition, defendant formerly lived on the street on which the red car was parked.

Defendant argues that no weapon, DNA, or fingerprints linked him to the crime. However, direct evidence linking a defendant to a crime is not required, and circumstantial evidence is sufficient. *Lymon*, 342 Mich App at 56-57. Defendant also asserts that McNeely was not credible in several respects, including because he did not know if he saw the fight, he said he was right next to the car but the video shows he was not, he participated in robbing the victim after the shooting, and he admitted that he has poor memory. McNeely testified both that he was present at the fight and that he did not remember if he saw the fight. He also admitted receiving marijuana taken from the victim's car after the shooting and that his memory was poor. Despite these inconsistencies and weaknesses in McNeely's credibility, the jury was entitled to believe his testimony about the shooting. Though the video shows that while McNeely was not directly next to the vehicle, he was close enough to have seen the shooting. Credibility determinations must be resolved in favor of the jury's verdict. *Id.*

Defendant further argues that the videos do not show his car or even a Monte Carlo, the person in the video is not identifiable, and the timeline of the videos was created by the police. Again, although the videos did not directly establish that defendant shot the victim, they provided circumstantial evidence and reasonable inferences supporting his identity as the perpetrator. See *id.* at 56. Whether law enforcement accurately compiled the video was a question of fact for the jury to resolve, and it was up to the jury to determine how much weight to give to the video evidence. We will not substitute our judgment for that of the jury regarding matters of weight and credibility. See *id.* at 56-57.

Lastly, defendant argues that the fact that the victim had been previously shot was ignored by the police during the investigation. Myson Bost, Jr., the victim's son, testified that the victim had been "shot numerous times in his life," and the medical examiner found bullets from old gunshot wounds in the victim's body. However, the medical examiner testified that old bullets were not related to the victim's cause of death, and there was no evidence that the victim's death was related to the prior shootings.

Viewed in a light most favorable to the prosecution, the evidence was sufficient to enable the jury to find beyond a reasonable doubt that defendant was the person who committed the charged crimes.

### III. *BRADY* VIOLATION

Next, defendant argues that the prosecutor violated *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963), by failing to produce all of his phone records until after he filed his postjudgment motion for a new trial. We disagree.

## A. STANDARDS OF REVIEW

"A trial court's decision on a motion for new trial is reviewed for an abuse of discretion, which occurs when the trial court renders a decision falling outside the range of principled decisions." *People v Dimambro*, 318 Mich App 204, 212; 897 NW2d 233 (2016) (quotation marks and citation omitted). This Court reviews de novo constitutional claims, such as an alleged *Brady* violation. *People v Burger*, 331 Mich App 504, 516; 953 NW2d 424 (2020). However, the trial court's underlying factual findings are reviewed for clear error. *Dimambro*, 318 Mich App at 212. "A finding is clearly erroneous if it leaves this Court with a definite and firm conviction that the trial court made a mistake." *People v Vaughn*, 344 Mich App 539, 549; 1 NW3d 414 (2022) (quotation marks and citation omitted).

## B. ANALYSIS

Under *Brady*, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Burger*, 331 Mich App at 516-517 (quotation marks and citation omitted). "To establish a *Brady* violation, a defendant must establish that (1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) that is material." *Id*. at 517 (quotation marks and citation omitted). "Evidence is favorable to the defense when it is either exculpatory or impeaching." *Id*. (quotation marks and citation omitted). "To establish materiality, a defendant must show that there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (quotation marks and citation omitted).

Turning first to whether the prosecutor suppressed evidence, the trial court found that defendant failed to show that the prosecutor obtained data from defendant's second phone that it failed to disclose. There was conflicting evidence whether the prosecutor provided the full phone records to trial counsel before trial. The prosecutor asserted that he provided a thumb drive containing all data related to defendant's phone to the brother of defendant's attorney before trial. The brother, who is also an attorney, testified at the *Ginther* hearing that he never received a flash drive from the prosecutor. Defendant's attorney similarly testified that he requested all discovery and he never received a flash drive from his brother. However, he did not recall specifically what evidence he received.

Nevertheless, assuming without deciding that the phone records were suppressed and exculpatory, they were not material. The full phone records established that before and after the time of the shooting defendant's phones were both located near where defendant claimed to be. But because the phones were not being used at the time of the shooting, defendant's location at that time could not be established by use of cellphone data. Thus, the records do not show that he was or was not at the site of the shooting when it occurred, only that the phone was there. The evidence only showed the phones pinging off a tower near Puritan and Schaefer before and after the shooting, and the prosecutor produced maps showing the distance between the tower and defendant's home to establish that defendant had time to travel to the crime scene and back between the calls, which defendant does not dispute.

Defendant correctly observes that the records do not establish that he was at the site of the shooting when it occurred, but they also do not establish that he was anywhere else at that time. Notably, the prosecutor did not rely on phone records to establish defendant's *location* at the time of the shooting. Because the records do not establish defendant's location at the time of the shooting or exclude the possibility that he was at the scene, and other circumstantial evidence presented at trial supported that defendant was present when the shooting occurred, there is not a reasonable probability that the phone records would have resulted in a different outcome of the proceeding. For these reasons, the trial court did not abuse its discretion when it denied defendant's motion for a new trial on the basis of *Brady* violations.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant alternatively argues that trial counsel was ineffective by failing to pursue the phone records to establish defendant's location at the time of the offense. We disagree.

## A. STANDARDS OF REVIEW

"Generally, whether a defendant had the effective assistance of counsel is a mixed question of fact and constitutional law. This Court reviews findings of fact for clear error and questions of law de novo." *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012) (quotation marks and citations omitted). "A finding is clearly erroneous if it leaves this Court with a definite and firm conviction that the trial court made a mistake." *Vaughn*, 344 Mich App at 549 (quotation marks and citation omitted).

## B. ANALYSIS

To establish a claim of ineffective assistance of counsel, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that that outcome would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Yeager*, 511 Mich 478, 488; 999 NW2d 490 (2023) (quotation marks and citations omitted). "Generally, attorneys are given broad latitude to determine trial strategy, and there is a strong presumption that counsel's performance was born from sound strategy. However, counsel's strategic decisions must be objectively reasonable." *Id*. (citations omitted).

Defendant argues that trial counsel was ineffective by failing to subpoena the full phone records and relying only on what the prosecutor provided him. Defendant claims he was denied a defense based on his location at the time of the offense. Defendant acknowledges the prosecutor's argument that the records do not provide an alibi at the time of the shooting, but he maintains that they were necessary to respond to the officer's testimony that the police sought the GPS records to show defendant's location.

Even if defendant can show his attorney's conduct fell below an objective standard of reasonableness, defendant cannot show a reasonable probability that trial counsel's failure to obtain and present the phone records affected the outcome of the trial. As discussed earlier, the phone records were neither exculpatory nor material. Although the records could not directly place defendant at the scene of the crime when it occurred, they also did not place him elsewhere at that

time or otherwise exclude the possibility that he was at the scene when the shooting occurred. Thus, there is no reasonable probability that the outcome of defendant's trial would be different had trial counsel obtained the full phone records before trial.

## V. REFERENCES TO DEFENDANT'S PRIOR INCARCERATION

Defendant also argues that he was denied a fair trial by repeated references to his prior incarceration in front of the jury, and the trial court abused its discretion by denying his numerous motions for a mistrial. We disagree.

### A. STANDARDS OF REVIEW

"To preserve a claim that there was an irregularity warranting a mistrial, defendant had to move for a mistrial in the trial court and assert the same ground for relief before the trial court that he asserts on appeal." *People v Haynes*, 338 Mich App 392, 410; 980 NW2d 66 (2021). Trial counsel moved for a mistrial after each of three references to defendant's prior incarceration. Therefore, defendant's argument as it relates to those references is preserved. However, because trial counsel did not object or move for a mistrial after the reference to defendant's telephone call from jail, his claim that he was denied a fair trial on this basis is unpreserved.

"This Court reviews constitutional due-process claims de novo." *People v Boshell*, 337 Mich App 322, 335; 975 NW2d 72 (2021). This Court reviews a trial court's decision on a motion for a mistrial for an abuse of discretion. *Id*. "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *Id*. at 339 (quotation marks and citation omitted). This Court reviews unpreserved claims for plain error affecting defendant's substantial rights. See *People v Jackson*, 292 Mich App 583, 592; 808 NW2d 541 (2011).

### B. ANALYSIS

"A mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant . . . and impairs his ability to get a fair trial." *People v Alter*, 255 Mich App 194, 205; 659 NW2d 667 (2003) (quotation marks and citation omitted). "References to a defendant's prior incarceration are, unless specifically ruled otherwise, generally inadmissible." *People v Spencer*, 130 Mich App 527, 537; 343 NW2d 607 (1983). "However, not every instance of mention before a jury of some inappropriate subject matter warrants a mistrial. Specifically, an unresponsive, volunteered answer to a proper question is not grounds for the granting of a mistrial." *People v Griffin*, 235 Mich App 27, 36; 597 NW2d 176 (1999) (quotation marks and citation omitted), overruled on other grounds by *People v Thompson*, 477 Mich 146, 148; 730 NW2d 708 (2007).

On appeal, defendant identifies four references to his prior incarceration and argues that these repeated references denied him a fair trial. The first reference occurred when the prosecutor asked one witness when the witness met defendant, to which the witness responded: "He had just got out of prison." Trial counsel moved for a mistrial, but the trial court agreed with the prosecutor that the jury would hear that defendant was convicted of a felony, so the statement that he was just released from prison did not create irreparable prejudice. The trial court instructed the jury to disregard the comment.

-6-

The second reference occurred when the prosecutor asked another witness how she knew defendant, and she stated, "[H]e [was] my boyfriend when I was young and when he [went] back and forth to jail." Trial counsel again moved for a mistrial. The court denied the motion for a mistrial and again instructed the jury to disregard the comment.

The third reference was also made by this witness, this time during cross-examination by trial counsel. On cross-examination, the witness testified that "[e]very time he get locked up we break up" and "when he leaves it's like a break up. He did five years." Trial counsel again moved for a mistrial, but the trial court denied the motion and instructed the jury to disregard the comment. Finally, also during cross-examination, trial counsel asked the witness about the call from defendant, and the witness referred to it as the call "[f]rom the jail." As previously noted, trial counsel did not object to this reference or move for a mistrial.

There is no dispute that the references to defendant's prior incarceration were not admissible, as shown by the trial court's instructions to the jury to disregard those comments. However, each instance was either unresponsive or volunteered by the witness, which weighs against granting a mistrial. See *Griffin*, 235 Mich App at 36. Furthermore, the prejudicial effect of these references was low because the jury was informed by stipulation that defendant was a convicted felon and none of the references identified *why* defendant was incarcerated. Therefore, these references did not impair defendant's ability to receive a fair trial. In addition, the specific reference to defendant being in jail was not highly prejudicial, given that defendant was charged with first-degree murder and, thus, the jury would reasonably expect him to be in custody pending trial.

Accordingly, the trial court did not abuse its discretion by denying defendant's motions for a mistrial, and defendant cannot establish plain error affecting his substantial rights in relation to the unpreserved reference.

VI. GREAT WEIGHT OF THE EVIDENCE

Finally, defendant argues that the jury's verdict is against the great weight of the evidence because no one identified him as the person who killed the victim. We disagree.

A. STANDARDS OF REVIEW

This Court reviews "for an abuse of discretion a trial court's grant or denial of a new trial on the ground that the verdict was against the great weight of the evidence." *People v Unger*, 278 Mich App 210, 232; 749 NW2d 272 (2008). "The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v Anderson*, 322 Mich App 622, 632; 912 NW2d 607 (2018) (quotation marks and citation omitted).

B. ANALYSIS

"Generally, a verdict is against the great weight of the evidence only when it was more likely the result of causes outside the record, such as passion, prejudice, sympathy, or some other extraneous influence." *People v Evans*, 335 Mich App 76, 87; 966 NW2d 402 (2020) (quotation

marks and citation omitted). "Conflicting testimony and questions of witness credibility are generally insufficient grounds for granting a new trial. Absent exceptional circumstances, issues of witness credibility are for the trier of fact." *Unger*, 278 Mich App at 232 (citations omitted).

> Conflicting testimony, even when impeached to some extent, is an insufficient ground for granting a new trial. Unless it can be said that directly contradictory testimony was so far impeached that it was deprived of all probative value or that the jury could not believe it, or contradicted indisputable physical facts or defied physical realities, the trial court must defer to the jury's determination. [*People v Musser*, 259 Mich App 215, 218-219; 673 NW2d 800 (2003) (quotation marks and citations omitted; cleaned up).]

Defendant only challenges the weight of the evidence as it relates to his identity as the perpetrator. He argues that there was no evidence that he was involved in the crime, that the police investigation was inadequate, and that the video evidence did not show a red Monte Carlo. Defendant does not argue there was conflicting testimony but that there was a lack of competent evidence of his identity. As previously discussed, the prosecutor was not required to establish defendant's identity with direct evidence and the prosecutor presented sufficient circumstantial evidence that defendant was the perpetrator of the charged offenses. The police's failure to investigate a nearby vacant house or take any additional DNA or fingerprint samples goes to the weight of the evidence and the officers' credibility, but it does not demonstrate that the jury's verdict is contrary to the great weight of the evidence. The prosecutor was not required to rule out every theory. See *People v Hardiman*, 466 Mich 417, 423-424; 646 NW2d 158 (2002) ("Even in a case relying on circumstantial evidence, the prosecution need not negate every reasonable theory consistent with the defendant's innocence, but need merely introduce evidence sufficient to convince a reasonable jury in the face of whatever contradictory evidence the defendant may provide.") (quotation marks and citation omitted). Finally, to the extent that one witness's identification testimony was impeached, the testimony was not deprived of all probative value, was not contradicted by indisputable facts, and it did not defy physical realities. The individual witnessed the shooting and the jury's credibility determination must be upheld.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly
/s/ Michelle M. Rick